# Richmond

## LIBERTY MUTUAL INSURANCE COMPANY V. ELIZA MONEY.

October 9, 1939.

Record No. 2168.

Present, All the Justices.

*Armistead L. Boothe,* for the appellant.

*Frederick L. Flynn,* for the appellee.

GREGORY, J., delivered the opinion of the court.

On August 8, 1938, Clingmon Money, while unloading beer cases, suffered an injury in his right groin. He died September 8, 1938, of lobar pneumonia. The Industrial Commission made an award in favor of Eliza Money, his widow, which is the subject of the present review.

The sole issue here to be determined is whether there was any causal connection between the accident to Money and his death. The commission found that the accident was a contributing cause.

The evidence discloses that Money was employed by Meade H. Kendrick, trading as Kendrick's Service. His duties required him to load and unload beer cases on and from a truck. Prior to the accident he appeared to be in

good health except that he had pyorrhea. He had not missed a single day's employment for 11 years prior to the accident nor had he been treated for any disease during that time.

On August 8th while unloading beer cases from a truck his right foot slipped a distance of from 18 to 24 inches and he fell and was injured in his groin. From the time of his injury until his death a month later he suffered from the injury and continued to grow worse.

Money called in his physician two days after the accident and was told by him that inasmuch as he was covered by liability insurance he should go to the insurance clinic in Washington, D. C., for treatment. This clinic is maintained by the insurance companies and is in charge of physicians employed by them. At the time he went to see his physician he was suffering pain in his back and hip which extended down his right leg. The right leg later swelled to an abnormal size causing high fever and intense pain.

The treatment at the clinic was not very successful. The patient continued to suffer great pain. He again called his own physician and at this time the leg was flexed, greatly swollen and Money was unable to move it. His physician sent him to a hospital. At the hospital he was again seen and treated by the physicians of the insurance companies. His leg continued to be badly swollen and he made no improvement. His condition was diagnosed at that time as diabetes and pyorrhea and he also had phlebitis. It was suspected that he had an abscess.

Money died on September 8th and an autopsy was performed which disclosed that he had lobar pneumonia, generalized toxemia, chronic nephritis, long standing inflammation of the coecum, diabetes, pyorrhea, abscess on the right side and thrombophlebitis of the right femoral vein.

The appellant contends that Money's death was the direct result of pneumonia which was brought on by the diseases which he had and that it had no connection with the accident. Thus it is argued that the award is not supported by the evidence.

■ It is true that physicians employed by the insurance companies testified that the death of Money could not be attributed to the accident but was solely due to the many ailments he had. On the other hand, from the testimony of other physicians it could be inferred that the accident caused a "flare up" of the diseases with which he was afflicted, and in that manner the accident was a contributing cause of death. When we consider the undisputed fact that Money had not lost a day from his work in 11 years and to outward appearances seemed to be in good health, except the disease of the gums, we can not say as a matter of law that the award is without evidence to support it.

Chairman Nickels rendered the opinion of the commission and after setting forth many excerpts from the testimony he made the following findings of fact and conclusions of law which we think are justified and with which we are in accord: "The facts above quoted and other parts of the record show a man who had worked steadily although certain diseased conditions were in evidence. He sustained an accident which was admitted. Following this he grew progressively worse and ultimately died. There was evidence of pain down the back and hip going into the right leg which began the day of the accident and lasted till death. A careful study of the record shows continuous pain in the area of the psoas muscle. The subjective symptoms of pain in the region of the upper right thigh and in the right groin began with the accident and were followed by the objective symptoms of swelling. He suffered intense pain; ran a high fever, and could not move himself in bed.

"It was shown that the deceased had abscessed teeth. There is a possibility that the abscess in the region of the psoas muscle was secondary to the infection in the teeth. However, as a general rule many are seen by physicians with diseased teeth and among such number few with abscess in the region of the psoas muscle. The thought of the abscess being secondary to the diseased teeth is in the nature of a theoretical explanation of a possibility, rather than a practical application of the thought expressed by

Dr. Gray to the effect that ' * * * strain of the psoas muscle is *not unusual,* and induces pain * * * .' In this case the pain began with the accident, there were subjective symptoms in the region of the psoas muscle, followed by the objective symptoms of tenderness and swelling. If abscessed teeth were the primary cause for this condition, it is equally as probable the infection would have resulted in the absence of trauma. On the other hand the presence of a general toxic condition would require less trauma to produce a flare up of the predisposing condition, than is ordinarily required in a healthy person. Quite naturally, there is a more immediate danger of getting an abscess in the presence of a general toxemia from abscessed teeth, than there would be in the absence of this predisposing condition. Hence, all the causative factors of a traumatic abscess follow each other in an unbroken chain in the instant case. The accident must have done one of two things: either stretched the muscle by hyperextension of the thigh, or have jerked it by a quick flexion in an attempt to save himself from the fall. Such strains, according to Gray's Anatomy, are not unusual. The underlying diseased conditions of nephritis, diabetes and general toxemia from diseased teeth made the deceased more susceptible to an infection from accidental causes. A preponderance of the evidence shows that the abscess of the psoas muscle was of traumatic origin and that the pneumonia which was the immediate cause of death was produced by it.

"It is a foregone conclusion that an accident occurred and the compensation payments hereinbefore stated were made on the basis of a compensable case. The evidence quoted shows that although the deceased had continued to work, his health was undermined by a generalized diseased condition. It is alleged that death was produced by natural causes bearing no causal relationship to the accident. In tracing the facts in the chain of causal relationship in an endeavor to find the proximate cause for death, one must not pass over lightly a deteriorated health condition which had produced a general toxemia. This thought is repeatedly

emphasized throughout the record. When the accident was superimposed upon the diseased condition there follows an unbroken chain of facts so closely interwoven with the accident, one must resort to pure medical theory to arrive at the conclusion from the evidence as a whole that the accident was not a contributory factor in lighting up the latent diseased condition. The inference from the facts proven by positive evidence shows a natural and rational sequence of events between the accident and death of such weight as to justify the conclusion the accident was a contributory cause.

██ " 'Evidence that an existing disorder reaches the point of disablement during employment, of course, does not prove accidental or other injury arising out of such employment. It is sufficient, however, (assuming other elements proved) if by weakening resistance or otherwise an accident so influences the progress of an existing disease as to cause death or disablement.'

"Schneider's Workmen's Compensation Law, Vol. 1, p. 950; *Voorhees* v. *Smith Schoonmaker Co.*, 86 N. J. L. 500, 92 A. 280; *Trodden* v. *McLennard,* 4 B. W. C. C. 190; *Doughten* v. *Hickman,* 6 B. W. C. C. 77; *Puritan Bed Spring Co.* v. *Wolfe,* 68 Ind. App. 330, 120 N. E. 417.

██ " ' * * * if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat the right to compensation.' Schneider's Workmen's Compensation Law, Vol. 1, p. 951; *Madden's Case,* 222 Mass. 487, 494, 111 N. E. 379, L. R. A. 1916D, 1000.

" 'As a general rule the pre-existing physical condition is immaterial if the injury is proximately caused by an accident arising out of and in the course of the employment. The fact that the accident of itself would not have been sufficient to cause the injury in the absence of a pre-existing disease is no defense, for the employer takes the employee as he finds him, and if the accident accelerates or aggravates a pre-existing diseased condition, the injured party is en-

titled to compensation, while on the other hand an injury due to the natural progress of the disease itself will not warrant a finding that the injuries were due to an accident.' Schneider's Workmen's Compensation Law, Vol. 1, p. 952; *In re Brightman*, 220 Mass. 17, 107 N. E. 527, L. R. A. 1916A, 321.

" 'The proof goes no further in support of the defense of this suit than to show that the plaintiff might, and perhaps would, at some time, have become disabled by the disease that was lurking in his system, even if the accident complained of had not happened. The evidence leaves no doubt that the plaintiff's physical disability resulting from the accident is worse than it would be if he had not been diseased at the time of the accident. But the accident was none the less the proximate cause of the present disability.' Schneider's Workmen's Compensation Law, Vol. 1, p. 953.

"The law controlling the instant case is well settled. The only source for a difference of opinion relates to the findings of fact. As already pointed out, we believe and so find, that the accident was a contributory factor in producing death by aggravating a predisposing condition. *Big Jack Overall Company* v. *Bray*, 161 Va. 446, 171 S. E. 686, 14 O. I. C. 349, 492, 15 O. I. C. 399."

Quite recently, this court in *Justice* v. *Panther Coal Company*, 173 Va. 1, 2 S. E. (2d) 333, held that the widow of a deceased miner was entitled to an award for his death which was due to pneumonia but which followed some ten days after he had been injured by accident in the coal mine. Mr. Justice Hudgins in speaking for the court summarized the facts in that case as follows: "The uncontroverted facts are: On February 22, 1938, L. E. Justice was caught under a fall of slate in the mines of the Panther Coal Company. It took some 45 minutes to get him out of the mine, on a stretcher, and down the mountain to Dr. Sanders' office. An examination disclosed that the injured man was suffering intense pain from shock, and a fracture of the pelvis on the left side. He was perspiring freely and his skin was clammy. He was given first aid treatment, and sent in a

closed car to the hospital at Richlands, some 52 miles away. The weather was very cold, and there was a drizzling rain. It was determined by the physicians at the hospital that the administration of ether was necessary in order to attempt the reduction of the fracture. This was done on February 24. On February 27 the patient developed pneumonia. On March 3 he became delirious, and died at 12:30 a. m., March 4.

"These facts are sufficient to convince the lay mind of the causal connection between the accident, injury and death * * * ."

█ There are a number of pertinent cases referred to in the *Justice Case, supra,* which are authority for the finding of the commission here. It is not necessary to cite them. We there concluded: "The general rule, deductible from these and other authorities, is that causal connection is established when it is shown that an employee has received a compensable injury which materially aggravates or accelerates a pre-existing latent disease which becomes the direct and immediate cause of death. Schneider's Workmen's Compensation Law, 2d Ed., section 138, and cases cited in footnote. Note 20 A. L. R. 66."

█ It is assigned as error that the commission inserted in its opinion a passage from Gray's Anatomy (1905 edition) which describes the psoas muscle and used this medical authority in support of its conclusions. We think the commission was warranted in this action by the broad provisions of the Act.

Innumerable authorities from other jurisdictions are cited and relied upon in the petition for appeal, but we must rest our decision upon our own statutes and adjudicated cases.

We are of the opinion that the award should be affirmed.

*Affirmed.*