# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HELEN M. ROGERS v. MRS. LUTHER WILLIAMS.

June 21, 1954.

Record No. 4260.

Present, All the Justices.

The opinion states the case.

*Timberlake & Smith*, for the appellant.

*McCormick & Hayes; Allen, Allen, Allen & Allen* and *Sidney L. Berz*, for the appellee.

WHITTLE, J., delivered the opinion of the court.

On August 9, 1952, Luther Williams suffered a compensable injury while working as a laborer on the farm of appellant, Helen M. Rogers. On September 3, 1952, a memorandum of agreement was executed pursuant to § 65-90, Virginia Code, 1950, between the claimant and his employer providing for the payment of compensation during the disability period, which agreement was duly approved by the Industrial Commission.

Williams died on October 29, 1952, of an acute heart attack and his widow, the appellee here, filed her claim for death benefits under the Workmen's Compensation Act, Chapter 5, § 65-62, Code of Virginia, 1950. The hearing commissioner heard the case and awarded the widow the statutory benefits. From this award the employer appealed, stating in her brief:

"The sole question on this appeal is whether there was sufficient evidence to support the finding that the death of Luther Williams on October 29, 1952, resulted from an accident which he suffered in the course of his employment by the appellant, Helen M. Rogers, on August 9, 1952."

The facts disclose that Williams was tending cattle on Mrs. Rogers' farm when two bulls became enraged and in the melee which ensued Williams was crushed against a trailer by one of the animals. The blow and pressure inflicted to the anterior chest was of sufficient severity to interfere with breathing although Williams was not rendered unconscious.

On the evening of the accident Williams went to the office of Dr. C. H. Iden, complaining of severe chest pains, at which time a narcotic was administered and pain relieving drugs were given the patient. The following evening Dr. Iden was called to the Williams home where he found Williams nauseated and vomiting, his blood pressure below 100, and his pulse very slow. The doctor was suspicious that Williams was suffering from an ulcer and administered treatment for this condition.

On August 22, 1952, Williams again consulted Dr. Iden, complaining of severe chest pains, radiating into his arm. Nitroglycerine was administered and appeared to relieve what the physician then believed to be angina. On August 25th Williams was admitted to the hospital for a heart examination. X-ray revealed a duodenal ulcer, and electrocardiograms disclosed evidence of coronary insufficiency. The cardiologist discovered signs of infarction on September 8, 1952, and customary procedures were followed. On October 8th Williams was discharged from the hospital as "symptom-free". On October 28th he was brought back to the hospital suffering from severe chest pains of the type previously experienced, and death ensued in the early hours of October 29th.

It developed at the hearing that an electrocardiogram made in July, 1947, showed abnormalities consistent with myocardial damage. The condition was static, and there was no evidence at that time of a recent coronary occlusion. Lay evidence disclosed that Williams had no illness after July, 1947, and was steadily employed until the time of the accident on August 9, 1952.

The issue presented was one of causal relationship between the injury of August 9, 1952, and Williams' death on October 29, 1952, either as a producing or aggravating cause. In determining this question the Commission, while considering all the evidence introduced, the time element involved and other circumstances, relied heavily upon the statements of the three doctors who testified. These statements were substantially in agreement.

Dr. McKee, one of the physicians treating the patient, stated: "I think, it is my opinion, that there is probably a relationship between the accident and the final cause of death." Dr. Hortenstine, another attending physician, stated: "I believe, and it is my opinion, there is causal relationship." Both Doctors McKee and Hortenstine are cardiologists. Dr. Iden, the general practitioner who treated Williams from the time of the accident until his death, stated: "In reviewing

the case in my mind and the symptoms, I think there is a relationship between the accident and the coronary condition."

The Commission found as a fact "* * * that the death of Luther Williams was the proximate result of his accidental injury of August 9, 1952, and that the accident arose out of and in the course of his employment by the defendant."

Appellant contends that the evidence is indefinite and insufficient to show causal connection between the accident of August 9, 1952, and Williams' death on October 29, 1952. While the burden was on the claimant to prove causal connection, proof beyond a reasonable doubt was not required, a preponderance of the evidence being all that was necessary. *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 292, 28 S. E. (2d) 736, 740; *Byrd* v. *Stonega Coke & Coal Co.*, 182 Va. 212, 221, 28 S. E. (2d) 725, 729; *Walsh Construction Co.* v. *London*, 195 Va. 810, 815, 80 S. E. (2d) 524, 527.

When it is established that an accident to an employee activates an undeveloped and dangerous physical condition with mortal consequences, such accident is properly considered the proximate cause of the fatality. Causal connection is established when it is shown that the employee has received a compensable injury which materially aggravates or accelerates the pre-existing latent disease which becomes the direct cause of death. *Justice* v. *Panther Coal Co.*, 173 Va. 1, 6, 7, 2 S. E. (2d) 333, 336.

Where two conclusions may legitimately be drawn from the evidence, one favorable to the claimant and the other favorable to the employer, a factual question is presented for the determination of the Commission. Under these circumstances it becomes the function of the Commission to evaluate the evidence, and its finding of fact on the issue presented is binding on us. *Walsh Construction Co.* v. *London, supra*. (195 Va., at page 816).

For the reasons stated the award of the Commission is

*Affirmed.*