## Richmond

### MRS. HENRY R. LILLY v. SHENANDOAH'S PRIDE DAIRY AND TRAVELERS INSURANCE COMPANY

October 7, 1977.

Record No. 761555.

Present: All the Justices.

*Lawrence J. Pascal* (*Ashcraft, Gerel & Koonz*, on brief) for appellant.

*Paul D. Krause* (*Brian H. Rhatigan; Carr, Jordan, Coyne & Savits*, on brief), for appellees.

HARRISON, J., delivered the opinion of the Court.

The issue is whether the condition causing the disability of Henry R. Lilly, and his subsequent death, was the result of an accidental injury arising out of and in the course of the decedent's employment. On October 16, 1975, Lilly filed an application for compensation for total work incapacity as the alleged result of an accident which happened on February 7, 1975. Thereafter Lilly died on December 11, 1975. Subsequently, application was filed on behalf of the decedent's personal representative claiming total temporary disability benefits from February 7, 1975 to February 2, 1976, and application was made by decedent's dependent widow, Thelma Lilly, for death benefits.

The employer, Shenandoah's Pride Dairy, and its carrier, Travelers Insurance Company, defended on the grounds that the condition causing decedent's disability and his subsequent death was not the result of an accidental injury arising out of and in the course of his employment, and that any claim asserted

against them for temporary total benefits did not survive the employee's death.

In an abbreviated opinion, adopted upon review by the full Commission, a deputy commissioner found after "a careful review of this entire record with particular reference to its medical aspects ... that Lilly sustained a compensable accidental injury on February 7, 1975 and disability resulting therefrom until the death on December 11, 1975", but that the claim for temporary total disability did not survive the decedent. The opinion further recites that the medical record in the case fails to persuade the Commission that the death of the decedent on December 11, 1975, resulted from the accidental injury of February 7, 1975, observing that "the medical record is in strong conflict" and that "it is not the function of the Commission to choose from several positions or theories of a proponent's case the one that is most favorable to him". Accordingly, the Commission denied both the application of the claimant's personal representative for temporary total benefits and the claim of the widow for death benefits.

■ The principles of law which control our decision here are well-established. A claimant for death benefits under Code § 65.1-65 is required to prove a causal connection between the accident and the subsequent death by a preponderance of the evidence. The decedent, Henry R. Lilly, died of a heart attack. Both this Court and the Industrial Commission have held that where a claimant has suffered a heart attack which arose out of and in the course of his employment and which is determined to have been a producing or contributing factor in a second fatal heart attack, regardless of whether the second incident itself is compensable, death benefits are available to the dependent distributees under Code § 65.1-65. In *Rogers* v. *Williams*, 196 Va. 39, 42, 82 S.E.2d 601, 602-03 (1954), we stated:

"When it is established that an accident to an employee activates an undeveloped and dangerous physical condition with mortal consequences, such accident is properly considered the proximate cause of the fatality. Causal connection is established when it is shown that the employee has received a compensable injury which materially aggravates or accelerates the pre-existing latent disease which becomes the direct cause of death. *Justice* v. *Panther Coal Co.*, 173 Va. 1, 6, 7, 2 S.E.(2d) 333, 336."

■ We have also held in numerous cases, and specifically in *Rogers* v. *Williams, supra,* that:

"Where two conclusions may legitimately be drawn from the evidence, one favorable to the claimant and the other favorable to the employer, a factual question is presented for the determination of the Commission. Under these circumstances it becomes the function of the Commission to evaluate the evidence, and its finding of fact on the issue presented is binding on us. *Walsh Construction Co.* v. *London, supra.* (195 Va., at page 816)" 196 Va. at 42, 82 S.E.2d at 603.

However, in the instant case, because of the inadequacy of the statement of facts in the opinion of the Commission and the inconsistency of the conclusions it reached, we must make our own evaluation of the evidence and the weight to be accorded it.

Henry R. Lilly was employed by Shenandoah's Pride Dairy as a milk deliveryman in Prince William County. On February 7, 1975, while lifting and unloading cases of milk from his delivery truck, Lilly became ill. His condition was recognized by a fellow employee as a heart attack, and Lilly was taken to Prince William Hospital in Manassas, Virginia, where he was placed in its intensive care unit. He remained in the hospital for approximately two weeks. Upon release, and because of his weakened condition, Lilly was unable to return to his former employment, or to perform any work. Thereafter he moved from Virginia to his family home in Beckley, West Virginia. His local doctor in Beckley referred Lilly for treatment to a cardiac specialist in Cleveland, Ohio. On the evening before his appointment with the Cleveland doctor, Lilly suffered another heart attack and was placed in the intensive care unit of the Cleveland Clinic, where he died on December 11, 1975, the following day.

■ The record shows that prior to February 7, 1975, Lilly suffered several fainting spells which he attributed to his mild diabetic condition, although some of his fellow workers had suggested to him that he might have heart trouble. There are no issues of fact regarding Lilly's average weekly wage, the nature of his employment or his dependents. If there is a causal relationship between the myocardial infarction which resulted in the death of Lilly on December 11, 1975, and the effect of his work in lifting cases of milk for his employer on February 7,

1975, either by way of aggravation or as the direct cause of the condition, this case is compensable because the evidence shows an accident. In *Derby* v. *Swift & Co.*, 188 Va. 336, 343, 49 S.E.2d 417, 421 (1948), it was said: "While the decedent's injury was not accidental as to cause, it was as to result and this is sufficient under the statute."

An analysis of the medical testimony is necessary to determine if it preponderates in showing a causal relationship between Lilly's death and the physical exertion incident to the work he performed on February 7, 1975. It is again noted that, although the Commission denied the claim of the widow for death benefits, it held that the evidence, particularly with reference to its medical aspects, established a compensable accidental injury of Lilly on February 7, 1975, and that disability resulted therefrom until his death in December.

Lilly's attending physician at the Prince William Hospital from February 7 until March 7, 1975, was Dr. W. James Werner. This physician's report disclosed that while Lilly was working for Shenandoah's Pride Dairy lifting milk at the Holiday Inn he experienced severe chest pain. Dr. Werner's diagnosis was "acute myocardial infarction with ventricular fibrillation", and his conclusion was that Lilly "would never be able to do his previous occupation; may never be able to return to work". His prognosis for the patient was "fair".

On April 10, 1975, Dr. Werner wrote the Travelers Insurance Company a letter in which he reiterated his diagnosis and stated that during the decedent's hospitalization "further evidence of an acute myocardial infarction was documented". Werner further observed that "electrocardiograms obtained prior to February 7, 1975, and electrocardiograms done a few days after February 7, 1975, and subsequently have been identical". Because Mr. Lilly apparently triggered the myocardial infarction with heavy lifting, he was advised "to develop a program of very gradual increase of activity predominately daily increases in increments of walking".

After reviewing Lilly's death certificate, Dr. Werner wrote counsel for appellant on January 20, 1976: "[I]t is evident that his death was the result of his underlying arteriosclerotic heart disease, a calcific aortic stenosis, or valvular heart disease, and I presume precipitated to some extent by the cardiac catheterization procedure itself." Significantly, Dr. Werner also

said: "Further autopsy findings listed on the death certificate show that he indeed had severe coronary arteriosclerotic heart disease and the autopsy also proved the myocardial infarction of the 7th of February 1975."

And finally, on May 17, 1976, Dr. Werner wrote that in his opinion "the strenuous effort involved in Mr. Lilly's occupation on the very cold morning of February 7, 1975, directly precipitated the heart attack he sustained that morning", and "that Mr. Lilly had a heart attack on the 7th day of February, 1975 was confirmed by history, clinical course and laboratory findings while hospitalized in February, 1975. Because a heart attack results in a loss of muscle mass his heart was subsequently weakened and secondarily results or contributes to his demise on the 11th of December 1975".

The record shows that Lilly was sent to Dr. Bernard J. Walsh of Washington, D. C. for examination on June 4, 1975. In his written and detailed report to the Travelers Insurance Company, dated June 5, 1975, Dr. Walsh related Lilly's medical history and concluded, from his examination, the electrocardiograms which were taken in his office at the time of the examination, and an electrocardiogram taken in Dr. James Moss' office on January 3, 1975 for an assessment of his diabetes, that "Mr. Lilly's basic cardiac fault is that of calcific aortic stenosis, probably congenital in origin. . . ." Dr. Walsh's diagnosis was "aortic valve disease with heavy calcification of the valve, in addition to which some calcification of the coronary arteries was visualized". He concluded that Lilly's fundamental cardiac defect was "longstanding aortic valve disease dating from his youth, but productive of no symptoms except for the episodes of syncope in December 1974 and February 1975". Dr. Walsh believed that Lilly's "bouts of fainting" which he had while at work were induced by the effect of lifting the milk cases and were related to Lilly's severe aortic stenosis. He did not believe that Lilly suffered myocardial infarction at any time and that he "is no more disabled now than he was immediately before or after his fainting episodes, but he should not return to his former position with the dairy or carry out strenuous physical activity at any other time until he has cardiac surgery with replacement of his calcified aortic valve". He said that Lilly's calcific aortic stenosis was in no way related to his work for the dairy.

An autopsy was performed on Lilly's body. The final pathological diagnosis at the Cleveland Clinic Hospital disclosed:

"Extensive myocardial infarct, of varying ages, in part recent, posterolateral wall left ventricle, with aneurysmal dilation.

"Severe coronary atherosclerosis.

"Severe calcific aortic valvulitis with stenosis.

"Bilateral apical pulmonary emphysematous bullae and fibrous pleural scars.

"Remote myocardial infarct, anteroseptal wall left ventricle."

Lilly's attending physician at the Cleveland Clinic, Dr. Daniel F. Phillips, wrote on February 2, 1976, that in his opinion Lilly's death "resulted from a combination of severe aortic stenosis and severe diffuse coronary atherosclerosis with the resulting severe left ventricular impairment". While Dr. Phillips did not feel the original myocardial infarction caused his death, "this infarction was certainly contributory in view of the extensive scarring resulting from the infarction and its subsequent effect upon left ventricular function". On May 10, 1976, Dr. Phillips again wrote: "I do feel that the extensive coronary atherosclerosis with myocardial infarction shortened the expected life span for Mr. Lilly insofar as the aortic stenosis is concerned. Had there not been previous myocardial infarction or were the disease operable at the time of his visit here, Mr. Lilly would have had a much better outlook in regards to the catheterization."

Dr. Jack P. Segal, a cardiologist from Chevy Chase, Maryland, reviewed Lilly's medical history and wrote counsel for appellant on May 17, 1976: "I believe that the myocardial infarction on February 7, 1975 hastened this man's death on December 11, 1975. As you know, the old myocardial infarction was reported on the autopsy report and was associated with a left ventricular aneurysm."

And further, Dr. Lawrence Z. Satin, a cardiology specialist from Riverdale, Maryland, after reviewing the Lilly medical documents and the autopsy report, stated that it was obvious from the autopsy that Lilly "died from an extensive myocardial infarction of varying ages resulting in severe damage to cardiac muscle producing a myocardial aneurysm". Dr. Satin also reviewed Dr. Werner's medical report and stated that he "was in complete agreement with Werner that the strenuous work being

performed by Lilly on February 7, 1975 precipitated Lilly's first myocardial infarction and his heart attack. Satin concluded his report: "It is clear from that point [February 7, 1975] that the severe damage resulting from that first heart attack indeed led to his [Lilly's] demise in the latter part of 1975."

■ Assuming that at the time of the accident the deceased was suffering from a heart condition which may have been congenital, this alone does not defeat his right to compensation. In *Liberty Mutual Ins. Co.* v. *Money*, 174 Va. 50, 55-56, 4 S.E.2d 739, 741 (1939), we said:

> " ' " * * * if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat the right to compensation." [Authorities omitted.]

> " ' "As a general rule the pre-existing physical condition is immaterial if the injury is proximately caused by an accident arising out of and in the course of the employment. The fact that the accident of itself would not have been sufficient to cause the injury in the absence of a pre-existing disease is no defense, for the employer takes the employee as he finds him, and if the accident accelerates or aggravates a pre-existing diseased condition, the injured party is entitled to compensation, while on the other hand an injury due to the natural progress of the disease itself will not warrant a finding that the injuries were due to an accident." [Authorities omitted.]' "

■ We think the preponderance of evidence clearly shows a causal relationship between Lilly's death and the exertion incident to the work being performed by him for Shenandoah's Pride Dairy on February 7, 1975. We do not find the "strong conflict" in the decedent's medical record that is referred to in the Commission's opinion. While it is true that Dr. Walsh concluded that Lilly did not suffer myocardial infarction at any time, he did find a fundamental cardiac defect which he believed to be a long-standing valve disease dating from Lilly's youth. He further stated that Lilly may have had coronary heart disease, and he specifically counseled that Lilly should not return to his former position with the dairy or carry out strenuous physical

activity. Of more importance, Dr. Walsh's evaluation of this man was made as a result of an examination which occurred in June, 1975. Apparently he neither saw Lilly after that time, nor was he given an opportunity to reconsider his opinion and conclusions in light of the pathological report which was made following the autopsy. Dr. Walsh's report concerns only the February 7, 1975 heart attack, and it questions whether it is compensable under Code § 65.1-7. The Commission did not accept Dr. Walsh's opinion because it found that Lilly did sustain a compensable accidental injury on February 7, 1975, which totally disabled him until his death.

Other than Walsh, all the physicians who testified in the case had the benefit of the pathological report, and each found a causal connection between Lilly's heart attack of February 7, 1975, and his subsequent December 10, 1975 fatal heart attack. Those physicians who made reports after Lilly's death and after the autopsy were in the best position to evaluate the causal connection between the first and second heart attacks and to determine whether the first attack triggered or was a producing or contributing cause of the second fatal attack.

It is our conclusion that a preponderance of the evidence shows that on February 7, 1975, Lilly received a compensable injury which materially aggravated or accelerated his pre-existing heart condition and became a producing and contributing factor in causing his death.

Having concluded that Lilly's death resulted from the accident, and that his dependents are entitled to compensation from the date of accident, as provided by Code § 65.1-65, it is unnecessary that we consider the action of the Commission in holding that appellant's claim for total temporary disability payments did not survive. Accordingly, the final order of the Industrial Commission is reversed, and this cause is remanded to the Commission for the entry of an award consistent with the views herein expressed.

*Reversed and remanded.*