Richmond

# D. W. MALLORY & COMPANY, INC., ET. AL.

v.

# MARTHA E. PHILLIPS, ET. AL.

March 2, 1979.

Record No. 780863.

Present: All the Justices.

*Frank B. Miller, III (Mary Louise Kramer; Sands, Anderson, Marks & Miller,* on brief), for appellants.

*C. Allen Riggins* for appellees.

No brief or argument for Lillian Spencer, appellee.

CARRICO, J., delivered the opinion of the Court.

This case involves an application for compensation benefits filed with the Industrial Commission by the widow of an employee, John Phillips, who suffered a fatal heart attack while at work. After a hearing, a deputy commissioner denied the application. Upon review, the Commission reversed the deputy commissioner and awarded compensation benefits to the widow. On the employer's appeal to this court, the question for decision is whether the Commission erred in finding that "the work in which [Phillips] was engaged was the precipitating factor in causing his heart attack."

Employed as a "truck driver and helper around the yard," Phillips had worked for D. W. Mallory & Company, Inc., a coal merchant, for more than 30 years. The "biggest part" of Phillips' job, especially in the winter months, was driving a truck delivering coal to residential and commercial customers. When not engaged in delivering coal, Phillips was assigned, among other duties, the task of unloading railroad coal cars.

The cars, one or two of which arrived at Mallory's yard every week to ten days, were placed on a trestle over a storage area. Each car contained 50 to 60 tons of coal and was equipped with doors which, when opened, permitted the coal to slide out to the ground below. Large lumps that "hung up," however, had to be broken up by hand. Normally, it took an employee, working alone, two and one-half to three hours to unload a car. In cold weather, the coal had a tendency to "stick together," and it took more time to unload a car; the coal had to be separated with a shovel or bar or by vibrating the car by striking it with a five-pound sledge hammer. The unloading process involved a "pushing" effort, with no lifting involved. To Phillips' supervisor, the unloading job "didn't look like . . . hard work."

On December 27, 1976, a cold day, Phillips began about 1:00 p.m. to unload a car. During the course of the afternoon, his supervisor checked on him four times. The first three times, the supervisor heard Phillips shoveling or using his sledge hammer. On the last occasion, about 4:00 p.m., the supervisor found Phillips' body lying on a pile of coal beneath the trestle, with a sledge hammer nearby.

An autopsy performed on Phillips' body determined that his death resulted from "myocardial insufficiency due to arteriosclerotic coronary artery disease." Dr. Marcella F. Fierro, a medical examiner who was present during the autopsy, was the only medical witness to testify below. According to the doctor, Phillips, who was 64 years old at the time of his death, suffered from hardening of the arteries, an affliction not uncommon for men his age. In Phillips' case, however, all three coronary arteries showed severe hardening, with reduction of vessel movement to less than 10%. Phillips suffered also from hypertension, manifested by an enlarged heart. Phillips' heart showed "acute muscle fiber death," indicating that, over a period of time, he had suffered "at least continual and probably also sporadic death of heart muscle with replacement by scarring . . . a continual, on-going process of myocardial death." In short, Phillips' heart "had insufficient blood and subsequently [he] had a heart attack when he died."

In making its finding that "the work in which [Phillips] was engaged was the precipitating factor in causing his heart attack," the Commission stated in its written opinion:

> "The Commission, as well as the Supreme
> Court, has held in numerous cases that where
> evidence establishes an unusual exertion on

> the part of the claimant, followed by a dis-
> abling or fatal heart attack . . . a causal
> connection is generally established."

If we understand this statement correctly, the Commission was of opinion that prior decisions of this court and of the Commission have created some sort of presumptive rule in favor of the compensability of a heart attack following unusual occupational exertion. If this was the Commission's view, it was erroneous.

In support of its statement, the Commission cited in its opinion one case decided by this court[1] and four decided by the Commission.[2] None, however, stands for the proposition asserted by the Commission. In each case, the causal connection between work activity and heart attack was established, not by the aid of a presumptive rule, but by competent medical evidence.

Interestingly, three of the four of its own cases the Commission cited in its opinion involved heart attacks in firemen. Since the cases were decided, the General Assembly has seen fit to provide fire fighters, as well as law enforcement officers, a rebuttable presumption that a causal connection exists between work activity and heart disease. Code § 65.1-47.1.

Otherwise, where, as here, compensation benefits are sought for a heart attack suffered by an employee while at work, the burden is upon the claimant to prove that the attack falls within the statutory definition of a compensable injury as "injury by accident . . . arising out of . . . the employment." Code § 65.1-7. The "by accident" portion of the requirement may be satisfied by showing that the attack, while perhaps not accidental as to cause, was accidental as to result. *Lilly* v. *Shenandoah's Pride Dairy*, 218 Va. 481, 485, 237 S.E.2d 786, 788 (1977). The "arising out of" portion of the requirement is essentially a problem of causation. In solution of this problem, the claimant must prove that the work activity caused or contributed to cause the heart attack. *Johnson* v. *Capitol Hotel*, 189 Va. 585, 590-91, 54 S.E.2d 106, 109 (1949).

Where, as here, the employee suffers from a preexisting heart disease, the causation problem is complicated by the difficulty in determining whether the heart attack is merely a natural

---

[1]*Rogers* v. *Williams*, 196 Va. 39, 82 S.E.2d 601 (1954).

[2]*Atwater* v. *City of Virginia Beach*, 53 O.I.C. 7 (1971); *Peery* v. *Shaw Paint & Wallpaper Company, Inc.*, 49 O.I.C. 255 (1967); *Shugart* v. *City of Richmond*, 47 O.I.C. 300 (1965); *Hill* v. *City of Richmond, Fire Department*, 44 O.I.C. 130 (1962).

coincidence of the disease or a result of work activity. In this type of situation, common knowledge and experience are inadequate to resolve the problem; indeed, even among medical authorities, substantial disagreement exists concerning the relationship between work activity and a heart attack in a person with a preexisting heart disease. See discussion in *Haley* v. *Klingbell Management Co.*, 55 O.I.C. 151 (1973).

By necessity, therefore, the Commission must look to the medical evidence in a particular case to determine whether the necessary causal connection between work activity and a heart attack has been established. If any credible evidence supports the Commission's finding that work activity has or has not caused or contributed to cause the heart attack in a particular case, the finding is conclusive and binding upon this court. *Williams* v. *Fuqua*, 199 Va. 709, 713, 101 S.E.2d 562, 566 (1958). On the other hand, if no credible evidence supports the Commission's finding, this court is not bound thereby. *Lilly* v. *Shenandoah's Pride Dairy*, *supra*, 218 Va. at 488-89, 237 S.E.2d at 790-791.

■ We return, then, to the medical evidence in this case to determine whether there is any support for the Commission's finding of a causal connection between Phillips' work activity and his heart attack. As has been noted, Dr. Fierro was the only medical witness to testify below. In addition to the testimony previously outlined, Dr. Fierro testified concerning the relationship between work activity and a heart attack in a person suffering from arteriosclerotic coronary artery disease. The doctor stated that, generally, the collapse of such a person cannot be traced to work activity. The existence of a causal relationship between work, even of a strenuous nature, and a heart attack, the doctor said, "depends on whether it was . . . routine work or a sudden exertional stress not related to [the] usual work pattern."

When asked specifically concerning the unloading work Phillips was engaged in at the time of his death, Dr. Fierro stated:

> "If that type of work was his usual, daily,
> routine work then I would not be able to say it
> was a precipitating cause for his infarction."

Seizing upon this statement, Phillips' widow asserts that Dr. Fierro "testified that the type of heart attack suffered by Mr. Phillips could be precipitated by strenuous work which was not

usual, daily, routine work." Then, relating this assertion to the evidence that Phillips did not daily unload coal cars, Phillips' widow argues that the "inference is virtually compelled in this case that the heart attack of Mr. Phillips was precipitated by the work activity."

But Dr. Fierro's statement, *viz.*, that a precipitating cause could not be found if Phillips' daily work included unloading coal cars, cannot be interpreted to mean that, if the work was not performed daily, then a precipitating cause existed. Dr. Fierro's negative conclusion does not permit the affirmative inference sought to be drawn by Phillips' widow. Furthermore, Dr. Fierro herself negated such an inference when, immediately after making the statement upon which Phillips' widow relies, the doctor testified that Phillips' type of work could be considered a precipitating cause only if "it was something that he was involved in as a sudden, stressful, exertional activity."

At another point in her testimony, Dr. Fierro stated in substance that, as between two 64-year-old men whose "coronaries are the same," it was probably more likely that the one performing strenuous work would suffer a heart attack than the one not doing strenuous work. This is the only portion of Dr. Fierro's testimony quoted in the Commission's opinion, and, apparently, it is what the Commission considered sufficient to justify application of its presumptive rule that evidence of unusual exertion followed by a heart attack establishes a causal connection.

But, aside from the impropriety of the presumptive rule, the Commission's position ignores the entire thesis of Dr. Fierro's testimony, *viz.*, that only where "a sudden exertional stress" is involved in otherwise routine work, however strenuous, can it be said that a causal relationship exists between work activity and a heart attack in a person with arteriosclerotic coronary artery disease. It is clear from Dr. Fierro's testimony that she considered "sudden exertional stress" as something greater than "unusual exertion." By conditioning her ability to find medical causation upon the existence of "a sudden exertional stress," Dr. Fierro fixed, for the purposes of this case, the standard of proof the claimant was required to meet to establish the necessary causal connection between work activity and heart attack: that Phillips' work at the time of his death involved some "sudden exertional stress," rather than mere "unusual exertion."

The record is bare of evidence that the work in which Phillips was engaged at the time of his death involved any "sudden

exertional stress." To the contrary, so far as the record shows, he was performing uneventfully work he had been engaged in, while not daily, routinely for many years. To say that he experienced some eventuality involving "a sudden exertional stress" that caused his heart attack would require resort to pure speculation. Evidence, and not speculation, must support an award of the Commission.

Because no evidence supports the award in the present case, we must reverse the award and enter final judgment here in favor of Mallory.

*Reversed and final judgment.*