COURT OF APPEALS OF VIRGINIA


Before:   Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


HARRIET PULLER, WIDOW,
  ON BEHALF OF THE ESTATE OF
  JOHN A. PULLER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0886-11-4                      JUDGE JAMES W. HALEY, JR.
                                                         DECEMBER 6, 2011
FAIRFAX (COUNTY OF) SCHOOL BOARD


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

         Lawrence J. Pascal (Alaina M. Dartt; Ashcraft & Gerel, LLP, on
         brief), for appellant.

         Michael N. Salveson (Andrea Zizzi; Littler Mendelson, P.C., on
         brief), for appellee.


## I.  INTRODUCTION

Harriet Puller (hereinafter, "wife") appeals the decision of the Workers' Compensation

Commission denying dependent benefits purportedly arising from the death of her husband, John

Puller (hereinafter, "decedent").  Wife contends that the Workers' Compensation Commission

erred in failing to (1) apply a presumption that decedent died of work-related causes and

(2) conclude that decedent's death arose out of his employment.  We affirm.

## II.  BACKGROUND

We view the evidence on appeal in the light most favorable to "the prevailing party

before the commission."  Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d

431, 433 (2008) (citation omitted).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At 6:30 a.m. on July 30, 2007, decedent reported to the Fairfax County School Board, where he worked as a mail delivery truck driver. Six hours later, decedent would be found dead of a heart attack in his work truck.

Decedent had a fixed route, which he drove in an assigned van. Decedent's route took approximately six hours to complete and involved about forty stops. At each stop, decedent would spend about three or four minutes in an air-conditioned building where he would drop off and pick up mail. His job duties primarily involved either driving or going into and out of buildings delivering and picking up mail. To aid him in this task, decedent was provided with a hand cart. Decedent wore a golf-style shirt and pants and was provided with complimentary bottled water, ice, and a cooler to take on his route.

Decedent's van had an air conditioning system in the cab and, although the van had recently been in the shop to have its air conditioning repaired, there is no evidence in the record indicating that the air conditioning was not working that day.[1] The cargo area of the vehicle was not air conditioned. However, there was a partition between the cab and the cargo area which the driver could close to maximize the effects of the air conditioning in the cab. With sliding side doors and front windows, the same could be opened while the truck was operational, if the driver desired.

Shortly after noon on July 30, at decedent's final assigned stop for the day, his truck was spotted in reverse, abutted up against the curb and some bushes. The decedent was discovered inside with numerous burns on his body lying face down on the metal floor in the cargo area[2] to the side of and immediately behind the driver's seat. School personnel subsequently

---

[1] In fact, the air conditioning was found to be working when the van was inspected the following month.

[2] The cab area of the van had a rubber floor.

administered CPR and used an automatic external defibrillator, but decedent was unresponsive. Decedent was pronounced dead at Fairfax Hospital at 1:21 p.m. that afternoon.

Due to the unusual circumstances surrounding decedent's death, the police opened an investigation and an autopsy was performed by the state medical examiner's office. The medical examiner's office summarized its report of autopsy as follows:

> This 58-year-old man was unresponsive in his work truck. Autopsy reveals an enlarged heart, granular kidneys, and coronary artery disease with healed heart attacks. Toxicology is negative. There is no antemortem (before death) injury. The skin changes are postmortem (after death) heat artefacts, consistent with contact with a hot surface.

The medical examiner concluded that the cause of death was "Hypertensive and atherosclerotic cardiovascular disease" and that the manner of death was "Natural."

As part of their investigation, the police conducted an experiment on August 1, 2007, in which they placed the van in the afternoon sun and took various temperature measurements over a one-hour period on various locations within the van. It was determined that within fifteen minutes, the temperature on the metal floor of the cargo area in which decedent was found exceeded 100 degrees and, in one hour, it was nearly 120 degrees. On April 8, 2008, the police closed their investigation, stating in their report: "It appear[s] that Puller . . . died of a heart attack while backing his van, then fell to the floor of the van where he sustained the aforementioned burns." Thus, the police concluded that decedent died of natural causes.

On July 30, 2008, wife filed a claim for workers' compensation benefits. Wife's theory was that the heat of July 30, 2007 caused the heart attack which killed decedent. To support this theory, wife proffered the opinions of Dr. Richard Schwartz, a cardiologist, and Dr. Bruce Charash, an internist. Dr. Schwartz opined that decedent "sustained a cardiac arrest in the setting of coronary artery disease . . . precipitated by extremely high ambient temperatures which reached up to 118 to 120 degrees." Dr. Charash opined that "extraordinary heat . . . [in] the

- 3 -

vehicle in which Mr. Puller was operating caused heat stroke resulting in his fatal heart attack." In response, the employer offered the opinions of Dr. T.D. Nguyen, a cardiologist. Dr. Nguyen agreed with Dr. Schwartz that decedent sustained a cardiac arrest in the setting of coronary artery disease. However, Dr. Nguyen disagreed that the cardiac arrest was precipitated by extreme temperatures, stating that the cardiac arrest occurred under "fairly average ambient environmental conditions." Instead, Dr. Nguyen opined that the cardiac arrest was the product of a number of risk factors possessed by decedent including hypertension, diabetes, hypercholesterolemia, and cigarette smoking and, therefore, that the cardiac arrest was not work related. Dr. Nguyen further opined that decedent's death resulted from natural causes and that the heat-related injuries were "sustained as a result of post-mortem heat exposure." Dr. Nguyen noted that this latter opinion mirrors the conclusion arrived at by the medical examiner.

The employer also offered evidence into the record from the Old Farmer's Almanac to establish the temperature in Fairfax County on July 30, 2007 at a maximum of 84.2°F. Furthermore, the employer offered the deposition testimony of the Fairfax School Board employee who discovered decedent's body, who testified that the air in the vehicle had not seemed "hot" to him. Finally, the employer provided copies of decedent's medical records which indicate that one month prior to his death, decedent had been transported by ambulance to the emergency room at Prince William Hospital for chest pains.

By opinion dated December 10, 2009, the deputy commissioner denied the claim for benefits, concluding that wife had failed to establish by a preponderance of the evidence that decedent's death arose out of his employment. Wife appealed, and the commission affirmed the denial of benefits by opinion dated April 19, 2011. In affirming the deputy commissioner's denial of benefits, the commission concluded that the majority of the evidence in the record undermines the opinions of Dr. Schwartz and Dr. Charash and, furthermore, that the opinions of

- 4 -

the medical examiner and Dr. Nguyen were more persuasive and logical. The commission also concluded wife was not entitled to a presumption that decedent's death was work related. Wife now appeals.

## III. ANALYSIS

### Overview

For an injury to be compensable under the Workers' Compensation Act, such injury must be "by accident arising out of and in the course of the employment." Code § 65.2-101. "The words 'arising out of,' as used in the Act, refer to the origin or cause of the injury while the phrase 'in the course of' pertains to the time, place and circumstances under which the accident occurred." Grand Union Co. v. Bynum, 226 Va. 140, 143, 307 S.E.2d 456, 458 (1983) (citation omitted). "The concepts 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded." PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 221, 468 S.E.2d 688, 691 (1996) (citation omitted).

"An injury arises out of one's employment if there is a causal connection between the injury and the 'conditions under which the work is required to be performed.'" Dan River, Inc. v. Giggetts, 34 Va. App. 297, 304, 541 S.E.2d 294, 297 (2001) (citation omitted). The condition "'must be peculiar to the work [and] incidental to the character of the business.'" Id. (quoting County of Chesterfield v. Johnson, 237 Va. 180, 183-84, 376 S.E.2d 73, 75 (1989)).

"The burden of supplying evidence from which the inference can be legitimately drawn that the injury arose out of and in the course of the employment, rests upon the claimant." Butler v. Nolde Bros., Inc., 189 Va. 932, 944, 55 S.E.2d 36, 42 (1949) (quoting Sullivan v. Suffolk Peanut Co., 171 Va. 439, 443, 199 S.E. 504, 506 (1938)). "Claimant must prove by a preponderance of the evidence that he has satisfied each requirement." TBC Corp. v. Stephens,

49 Va. App. 650, 655, 644 S.E.2d 84, 87 (2007); see also Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978).

Is Claimant Entitled to a Presumption that Decedent's Death was Work Related?

Under certain circumstances, Virginia courts have granted claimants a presumption that the employee's death arose out of and in the course of employment. See generally Lawrence J. Pascal, Virginia Workers' Compensation Law & Practice § 3.03[3][e] (3d ed. 2000 & Supp. 2009). As one early case explained:

> [W]here an employee is found dead as the result of an accident at his place of work or near-by, where his duties may have called him during the hours of his work, and there is no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time, the court will indulge the presumption that the relation of master and servant existed at the time of the accident and that it arose out of and in the course of his employment.

S. Motor Lines Co. v. Alvis, 200 Va. 168, 171-72, 104 S.E.2d 735, 738 (1958) (internal citations omitted); see also Sullivan, 171 Va. at 447-48, 199 S.E. at 507-08; Boys & Girls Club of Va. v. Marshall, 37 Va. App. 83, 88, 554 S.E.2d 104, 106 (2001); Thomas Nelson Ltd. P'ship v. Fritz, 11 Va. App. 269, 273, 397 S.E.2d 891, 894 (1990).

This presumption, however, remains limited to its "original parameters." K & G Abatement Co. v. Keil, 38 Va. App. 744, 758, 568 S.E.2d 416, 423 (2002). It applies only to cases where the employee is "found dead . . . at his place of work or near-by," S. Motor Lines Co., 200 Va. at 171, 104 S.E.2d at 738, and, even then, only when no plausible inference suggests the accident might be noncompensable, see Baggett Transp. Co., 219 Va. at 644, 248 S.E.2d at 825 (holding the "occupation as a truck driver" did not subject employee to the risk of "being shot" while "alongside a public highway").

The factual "circumstances which form the basis of the presumption must be of sufficient strength from which the *only rational inference* to be drawn is that death arose out of and in the

course of the employment." Hopson v. Hungerford Coal Co., 187 Va. 299, 305, 46 S.E.2d 392, 395 (1948) (emphasis added). There must be "an absence of contrary or conflicting evidence on the point." Id.; see also Baggett Transp. Co., 219 Va. at 644, 248 S.E.2d at 826. When "conflicting inferences might logically be drawn from the circumstances," and the evidence supports a permissible inference that "there was no causal relationship between the death and the employment, the presumption [is] not applicable." Metcalf v. A.M. Express Moving, 230 Va. 464, 470, 339 S.E.2d 177, 181 (1986). Thus, no presumption can be said to arise where an employee suffers from pre-existing heart disease and subsequently dies of cardiac arrest while at work. See D.W. Mallory & Co., Inc. v. Phillips, 219 Va. 845, 848-49, 252 S.E.2d 319, 321-22 (1979) (holding that it was "erroneous" for commission to apply "some sort of presumptive rule in favor of the compensability of a heart attack following unusual occupational exertion").

This extra-statutory death presumption cannot be broadened beyond its fixed parameters. Making a "change in the parameters" of the death presumption, we have cautioned, "is a policy decision to be made, if at all, by the General Assembly." K & G Abatement Co., 38 Va. App. at 757, 568 S.E.2d at 422 (citing Pinkerton's, Inc. v. Helmes, 242 Va. 378, 381, 410 S.E.2d 646, 648 (1991)). Since its creation in the courts a half a century ago, "the General Assembly has not chosen to expand the presumption beyond its original parameters." Id. at 758, 568 S.E.2d at 423.

Under the circumstances of this case, the commission did not err in finding the death presumption inapplicable. It is undisputed that decedent had a pre-existing heart condition and that he died of cardiac arrest while at work. Consequently, this case fits squarely under the holding of D.W. Mallory & Co., and no presumptive rule applies. Instead, "[b]y necessity, therefore, the Commission must look to the medical evidence . . . to determine whether the necessary causal connection between work activity and a heart attack has been established." D.W. Mallory & Co., 219 Va. at 849, 252 S.E.2d at 322.

Having concluded that no presumptive rule applies, the Court now turns to wife's second, and final, assignment of error.

### Was there Credible Evidence from which the Commission could Conclude that Decedent's Injury did not Arise Out of and in the Course of Employment?

"'Where there is a conflict of evidence [concerning cause of death], the Commission's finding of fact is conclusive' when supported by credible evidence." Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 603, 445 S.E.2d 716, 718 (1994) (quoting Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 220, 28 S.E.2d 725, 729 (1944)).  Where the death presumption does not apply, the claimant has the burden of proving by a preponderance of the evidence that the decedent's fatal heart attack arose out of and in the course of his employment and that the conditions of the employment caused the injury.  Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989); Code § 65.2-101.

> An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.  The arising out of test excludes an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.  The causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship.

County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 75 (1989).

An employee is entitled to recover for injuries sustained if those injuries (not disease) were the immediate consequence of his exposure to a greater hazard by reason of his employment than that to which he otherwise would have been exposed.  Byrd, 182 Va. 212, 28 S.E.2d 725; Robinette  v. Kayo Oil Co., 210 Va. 376, 377, 171 S.E.2d 172, 173 (1969) (concluding that when an employee sustains an injury related to exposure to outdoor weather conditions, the injury is only compensable if there is something "catastrophic, extraordinary,

unexpected, or unforeseen" about the work conditions that would distinguish the employee's exposure from the exposure experienced by other outside workers).

There is conflicting medical testimony as to whether decedent's cardiac arrest was causally related to excessive heat exposure or was simply the result of his pre-existing coronary artery disease. "The Commission's factual findings are conclusive and binding . . . and a question raised by conflicting expert medical opinions is one of fact." Imperial Trash Serv., 18 Va. App. at 603, 445 S.E.2d at 718 (quoting Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981)). The determination of causation is a factual finding that will be upheld on appeal if credible evidence supports the finding. Id.

Although the expert medical opinions are in conflict as to whether heat exposure played a role in decedent's demise, credible evidence supports the commission's finding that it did not and that the death resulted solely from decedent's pre-existing coronary artery disease. The medical examiner's autopsy of decedent revealed, "an enlarged heart, granular kidneys, and coronary artery disease with healed heart attacks." She also concluded that there was "no antemortem (before death) injury" and that the "skin changes are postmortem (after death) heat artefacts, consistent with contact with a hot surface." Finally, the medical examiner concluded that the cause of decedent's death was "hypertensive and atherosclerotic cardiovascular disease" and his manner of death was "natural."

Similarly, Dr. Nguyen concluded that decedent suffered "sudden cardiac" death in the setting of ischemic heart disease (coronary artery disease)." She explained that coronary heart disease was a pathologic process that often results from risk factors that decedent possessed, "including hypertension, diabetes, hypercholesterolemia, and cigarette smoking." After considering the wife's theory that decedent's death from cardiac arrest was causally related to extreme heat conditions, Dr. Nguyen opined that the evidence "suggests a different sequence of

- 9 -

events; one which favors a theory that the patient suffered sudden cardiac death (natural causes) under fairly ambient environmental conditions with subsequent heat related injuries sustained as a result of post-mortem heat exposure."

Finally, the police investigation stated, "It appear[s] that Puller . . . died of a heart attack while backing his van, then fell to the floor of the van where he sustained the aforementioned burns. . . . [We] have determined that Mr. John Albert Puller died of natural causes . . . . No further investigation necessary."

In light of the foregoing, there is certainly credible evidence to support a finding that decedent died of a cardiac arrest entirely unrelated to heat exposure.[3] Wife's argument on appeal seeks to challenge this finding by directing the Court's attention to evidence in the record which suggests that the temperature in the van on the day in question was higher than the commission found. The primary evidence cited for this proposition is the police report discussing the heat levels found on the metal floor of the van during the police's attempt to re-create the circumstances of decedent's death two days after it occurred. However, the commission chose to discount this evidence, stating, "the heat of the floor of the van at some unknown time after Mr. Puller's death is not probative of the temperature of the air in the van at the time of or shortly before his death." "[I]t is for the [c]ommission to determine the probative weight to be accorded [conflicting] evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986). Instead, as discussed, *supra*, this Court need only determine

---

[3] This Court also notes that the facts of the instant case are distinguishable from those cases in which compensation has been awarded for heat stroke. See, e.g., Imperial Trash Serv., 18 Va. App. 600, 445 S.E.2d 716 (Garbage man was lifting heavy loads in eighty-six-degree weather, complained of heat, had no air-conditioning in truck, and treating physician listed cause of death as "acute deep vein thrombosis and pulmonary embolism as a result of severe dehydration and heatstroke."); Kjellstrom & Lee, Inc. v. Saunders, 42 Va. App. 673, 594 S.E.2d 281 (2004) (Signal man was standing in the sun on hot asphalt for over seven hours on a hot day, with no breaks and no water, and uncontradicted medical evidence showed that claimant's work, in the heat, without water, resulted in the heat stroke and heart attack.).

whether any credible evidence supports the commission's finding.  We conclude that such evidence exists.

For the foregoing reasons, the opinion of the commission is affirmed.

<u>Affirmed.</u>