**Gery D. PALMER, Respondent,**

v.

**KANSAS CITY CHIEFS FOOTBALL CLUB and Fireman's Fund Insurance Co., Appellants.**

**No. WD 31806.**

Missouri Court of Appeals, Western District.

Aug. 11, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 15, 1981.

Application to Transfer Denied Oct. 13, 1981.

David H. Clark, Margaret D. Lineberry, Kansas City, for appellants.

Hayward G. Lafferty, Kansas City, for respondent.

Before KENNEDY, P. J., SOMER-VILLE, C. J., and SHANGLER, J.

SHANGLER, Judge.

The employer Kansas City Chiefs Football Club appeals from a judgment which affirms the award of compensation by the Industrial Commission to claimant Palmer. The claimant, an offensive guard on the employer professional football team, was injured in the execution of a play in the course of a scheduled game. The administrative law judge found against Palmer, but the Industrial Commission on review of the transcript reversed that decision and entered an award for Palmer for injury to the back. The award of the Industrial Commission rests on the determination that the injury was from an abnormal strain in the course of the employment duty, and so the result of *accident* within the sense of § 287.020.2. The appeal poses the questions—among others—whether the award of the Industrial Commission rests on sufficient competent evidence on the record [§ 287.490.1] and, whether the Industrial Commission validly applied for compensation law to the facts found. *Saxton v. St. Louis Stair Co.*, 410 S.W.2d 369, 375[1–4] (Mo.App.1966).

The normal function of an offensive guard—according to Palmer—is to block on runs and pass plays. The injury resulted during the execution of a run. The play called was a left trap. The assignment of the offensive guard in such a play is to drive the oncoming defensive tackle—in this instance, one Larry Hand—out of position so as to create a hole for the ballcarrier. The offensive guard executes the play by an opening step and then a position behind the center to apply a block to the defensive tackle as he comes through. The success of the maneuver depends upon the ability of the offensive guard to remain lower than the defensive player. The team had run that play—with apparent success—several times during the game, but on this occasion the defensive player diagnosed the play as it developed and stunted its effect. In the course of that defensive tactic, the claimant Palmer was injured. The claimant described that sequence:

"Larry [Hand] saw the play coming, stepped down inside . . . to close the play, which is a defensive procedure to keep the offensive lineman from moving him out.

\*  \*  \*  \*  \*  \*

"It was a situation where he *got considerably lower than I did*, and as I said, closed down the gap, and *before I had the opportunity to get low enough again to block him*, I was right on top of him, and he came up through me, and *he was underneath my pads. I just was actually off balance and had not had the opportunity to make the play work right for me*, and he drove up through me, you know, stopping me completely, and created, I felt a numbing sensation all through my upper body which would *attribute to the position I was in and him coming up through my body underneath my pads.*" [Emphasis added]

The claimant recapitulated:

"As I stated, normally *the object of an offensive guard in a trap block is to get underneath the defensive lineman's pads and drive him out of the hole. Larry Hand, the defensive lineman, had closed down the hole and caught me in a situation I shouldn't have been in.* You know, you can run a whole day running trap blocks and, you know, *the first time you get up like that, you're going to have trouble, because he's going to get underneath you and drive you back. This particular play, you know, it shouldn't have happened that way. I should have been able to stay lower than him.*" [Emphasis added]

The claimant disclosed on cross-examination that professional play was the culmination of football experience which began in junior high school and extended through the university. He acknowledged he had become an accomplished professional football blocker, that when the task was done proficiently, he succeeded in the assignment against the defensive player, but sometimes the opponent bested him:

Q. So on this *occasion that you were relating earlier was a block similar to the blocks that you'd done many times against defenses like*—you had many defensive people, *only on this occasion, you just had a bad result. You just got hurt, is that right?*

A. Yes, sir.

Then again:

Q. Gery [Palmer], in summation, then, this injury ... occurred while you were carrying out a blocking assignment, is that correct?

A. Yes.

Q. *And but for having on this occasion been injured, it was something which you had done on many occasions in your professional as well as your college career?*

A. Yes.

Q. On the other *occasions before, you just didn't happen to get hurt.* On this occasion you did get hurt?

A. (Witness nods.)

    *    *    *    *    *    *

Q. So that which you were doing on the occasion that you—what was the defensive player's name?

A. Larry Hand.

Q. So what you were doing on that occasion was carrying out the same assignment, only that was one of the occasions where the defensive man got to you before you could get to him, is that right?

A. That's right.

[Emphasis added]

■ The award of the Industrial Commission for compensation[1] rests on the determination that the injury was the result of an abnormal strain. The law treats an abnormal strain as an *accident* and the resultant violence to the physical structure of the body as an *injury* within § 287.020.[2] *Crow v. Missouri Implement Tractor Company*, 307 S.W.2d 401, 405[1, 2] (Mo. banc 1957). The abnormal strain—the unforeseen event [the *accident*][2] by this analysis of workers compensation liability—amounts to the performance of the work in an abnormal manner or in a manner not routine. *Davies v. Carter Carburetor, Division of ACF Industries, Inc.*, 429 S.W.2d 738, 746[4] (Mo.1968). Work done in an awkward or unbalanced posture—albeit in the performance of a normal duty—which subjects the worker to an excessive stress and produces an unexpected strain results in a compensable injury under this principle. *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 297[10, 11] (Mo.1965). The right to compensation, nevertheless, rests on *accident*, an element of recovery not proved either by the fact of injury or from stresses usually incident to the work performance. *Brotherton v. International Shoe Company*, 360 S.W.2d 108 114[9] (Mo.App.1962); *Schoessel v. Standard Automotive Components*, 539 S.W.2d 708, 709[3] (Mo.App.1976). The burden remains on the claimant to prove both the accident and injury—the occupational cause and effect—the unexpected event and the resultant trauma. *Herring v. Safeway Stores, Inc.*, 499 S.W.2d 538, 540[3] (Mo.App.1973); *Baker v. Krey Packing Company*, 398 S.W.2d 185, 189[3, 4] (Mo.App.1965).

■ The appeal presents a question of law: whether the evidence shows an *accident* within the terms of the compensation law. In that assessment we are bound by the determinations of fact by the Industrial Commission drawn reasonably from the evi-

---

1. The award for the claimant was by a majority decision of the Commissioners. The dissent by Commissioner Taff adopts the rationale of Administrative Law Judge Kaut [reversed by the majority] that the evidence did not make out an accidental injury—that is, that there was abnormal strain was not proved. The administrative law judge denied compensation on the hearing on the additional ground that injury was a normal incident of professional football.

2. Section 287.020.2:

The word "accident" as used in this chapter shall ... be construed to mean an unexpected or unforseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.

dence and accord the employee favored with the award their full intendment. *Brotherton v. International Shoe Company*, 360 S.W.2d 108, 111[2, 3] (Mo.App.1962).

■ The award of the Industrial Commission rests expressly on the excerpt of the Palmer testimony [previously rescripted *in extenso*] that the injury resulted when defensive lineman Hand diagnosed the trap and took countermeasure to nullify the play:

It was a situation where he got considerably lower than I did, and as I said, closed down the gap, and *before I had the opportunity to get low enough again to block him, I was right on top of him, and he came up through me, and he was underneath my pads. I just was actually off balance and had not had the opportunity to make the play work right for me, and he drove up through me, you know, stopping me completely, and created, I felt, a numbing sensation all through my upper body which would attribute to the position I was in and him coming up through body underneath my pads.* [Emphasis added]

The majority of the Industrial Commission applied the abnormal strain analysis to find an accidental injury:

The Commission finds that in this particular instance the claimant's injury was caused by his unusual and *abnormal position due to being thrown off balance,*[3] rather than the result of the actual play or assignment he was attempting to complete. As the employee testified, *this instance was different and distinct from all others he had made before* because he

"just was actually off balance and had not the opportunity to make the play work right for me." [Emphasis added]

To invoke the abnormal strain doctrine the claimant must show that the usual occupation was done in an unusual manner or that the work was not the usual occupational task—or that some other unexpected source of strain produced the injury. *Crow v. Missouri Implement Tractor Company*, supra, 307 S.W.2d 401, 403 et seq. (Mo. banc 1957); *Merriman v. Ben Gutman Truck Service, Inc.*, supra, 392 S.W.2d 292, 297[10–11] (Mo. 1965). Thus, the critical component of the finding of fact on which the Industrial Commission rests award is:

"As the employee testified, this instance was different and distinct from all others he had made before because he 'just was actually off balance and had not the opportunity to make the play work right for me.'"

The employer Kansas City Chiefs contends that the award does not rest on substantial evidence on the record as a whole and, particularly that the testimony by claimant Palmer is not probative of that determinative finding.

■ The evidence of the occurrence came from claimant Palmer only. The recitations of the award notice no contradictions in that testimony.[4] The decision in favor of the claimant, rather, tacitly accords his credibility. That administrative determination of credibility precludes a court of review on that issue. *Sita v. Falstaff Brewing Corporation*, 425 S.W.2d 487, 488 [1, 2] (Mo.App.1968). Our review con-

---

3. The fact found by the Industrial Commission seems to convey that the *abnormal position*, that is the postural imbalance of claimant Palmer, was the result rather than a causal incident of the strain. *Brotherton v. International Shoe Company*, supra; *Crow v. Missouri Implement Tractor Company*, supra; *Hennecke v. Washington University*, 543 S.W.2d 525, 526[1–3] (Mo.App.1976). We assume for purpose of opinion—and the application of the abnormal strain doctrine—that the Industrial Commission majority meant that the claimant was actually in an unusual posture at the time the external force by the defensive lineman was

applied against the claimant rather than after the event.

4. The dissent of Commissioner Taff finds the testimony of claimant Palmer contradictory in that in one instance he testified he was off balance at the time of injury and in other instances that the play was a normal assignment executed on that occasion in the manner done on all other occasions. That essential evidentiary "contradiction" induced the dissenter to determine that the latter version of the event was more credible than the former and, hence, to determine the issue of abnormal strain [accident] against the claimant.

cerns not a question of fact or of credibility but of law: whether the evidence taken most favorably to the award was sufficient to prove a compensable injury. The more exact question of law the appeal poses is whether the cognate inferences of fact critical to the determination of abnormal strain [accident]—that the execution of the trap block on the occasion and injury was "different and distinct" from all the others Palmer had made before because on that occasion he was "off balance."[5] The evidence—not as a matter of credibility or contradiction—but as substantive proof—simply does not allow either corollary of liability found as fact by the Industrial Commission to support the award of compensation.

The testimony by claimant Palmer—stated, iterated and then reiterated—was that the trap block assignment on the event of injury was "a block similar to the blocks that [he had] done many times against defensive people," that a block was "a normal assignment that was made in practice, after practice, after practice, after practice, and game, after game, after game, after game," that the block "was something which [he] had done on many occasions in [his] professional as well as [his] college career." These variants [among the others] on that theme of testimony, all straightforward and uncontradicted, simply do not allow the inference of fact found by the Industrial Commission majority as a predicate for lia-

bility—that "this instance was different and distinct from all others he had made before." An inference inconsistent with the facts from which it is drawn fails as probative evidence. *Dugan v. Rippee*, 278 S.W.2d 812, 815[3–6] (Mo.App.1955).

That corollary of liability fails.

The Industrial Commission majority also found as fact that the injury of the claimant was caused by a *loss of balance* in the execution of the block assignment—the other corollary of accident by abnormal strain.[6] The question remains whether that fact considered in the full context of the uncontradicted Palmer testimony is probative of the ultimate inference that the *off balance* posture was an unusual position for the occupational task and, as such, subjected Palmer to an abnormal strain—by an unexpected internal or external force—and so constituted that unforseen event which becomes an accident under § 287.020.2.

The claimant acknowledged that an assignment to block was, in each instance, a test of proficiency between the offensive lineman and the defensive lineman which Palmer would sometimes win and sometimes lose. In the course of the schedule, Palmer came up against "equally proficient, tough, defensive men." The technique he employed varied "according to the type and quality and caliber" of the opponent. When he performed the assignment with

---

**5.** Whether evidence is probative of the inference drawn on an issue is a question of law. *Vietmeier v. Voss*, 246 S.W.2d 785, 787[1–3] (Mo.1952).

**6.** There is doubt that by *off balance* Palmer meant [as the Industrial Commission majority assumes] the term in the usual sense of an awkward posture for the intended bodily function. The context in which Palmer used that term:

"I just was actually off balance and had not had the opportunity to make the play work right for me, and he *drove up through me, you know, stopping me completely*, and created, I felt, a numbing sensation all through my upper body which would attribute to the position I was in and *him coming up through my body underneath my pads.*"

and his testimony, insistently repeated, that "*the object of an offensive guard in a trap

block is to get underneath the defensive lineman's pads*," "I should have been able to stay *lower than him*," and that on that account, "the defensive man got to [me] before [I] could get to [him]," all suggest an irresistible conclusion that Palmer used "off balance," not in the usual sense, but as a term of football art. The more reasonable import of that testimony [as our fuller discussion shows] is that the witness used "off balance" to describe a position of disadvantage of one lineman vis-a-vis the opponent lineman—in this case, a position not sufficiently low to strike the opponent beneath the protective shoulder pads and so dislodge him. We assume nevertheless for purpose of opinion that the evidence was probative of the finding of fact made by the majority that Palmer meant, and was, *off balance* in the usual sense. [Emphasis added]

skill, he "[blew] that defensive man out of the way." In a trap block, "the object of the offensive guard is to get underneath the defensive lineman's pads and drive him out of the hole." The critical tactic on the trap play in question was "to stay lower than him [defensive lineman Hand], but the opponent sensed the trap, got underneath the pads of the claimant, "drove up through [him]," and Palmer felt an injury. Palmer acknowledged repeatedly that he had executed that assignment many times, only this was one of the occasions the defensive man bested him—"got to [Palmer] before [Palmer] could get to him." The only distinction between this occasion and the others, he acknowledged, was the injury—Palmer "just had a bad result."

The record as a whole conclusively shows, therefore, that the function of a professional football lineman in a trap play is to maneuver the other player, to exploit his vulnerable posture. The lineman who establishes the lower stance succeeds. The unsuccessful lineman—Palmer in this instance—can be jostled off balance.[7] The method and purpose of that perfected skill are to find the opponent in an unexpected posture. The most accomplished among them, as Palmer concedes, will prevail only some of the times. The off balance position the claimant describes [and the Industrial Commission majority adopt as a premise for liability] therefore, was as usual an incident of the block assignment as not. This instance of play execution was no different than the many others, except for a bad result—this time, Palmer was injured. The *off balance* posture, therefore, was not an unexpected occupational event, but rather as customary as not. Whatever strain resulted was an expected incident of the usual work task done in the usual way. *Schoessel v. Standard Automotive Components, supra,* 539 S.W.2d 708, 709[1, 2] (Mo.App.1976); *Langendoerfer v. Hazel,* 576 S.W.2d 553[1–2] (Mo.App.1978).

The second corollary of liability fails.

■ The original decision entered by the hearing judicial officer [and overruled by the Industrial Commission majority] denied the claim on the separate ground that injury was a normal incident of a professional football game.[8] That is a fact acknowledged by claimant Palmer. That is also a fact of judicial notice. *English v. Old American Insurance Company,* 426 S.W.2d 33, 40[11–13] (Mo.1968). Despite the advances in the design of protective equipment under the tutelage of sports medicine, football remains a dangerous pastime fraught with expectation of injury. Park and Arnold, Protective Athletic Equipment, Journal of the Arkansas Medical Society, (Vol. 74, Number 5, October, 1977). What's the Story on Sports Equipment? The Physician and Sportsmedicine, p. 117 (March 1976). The compensation law protects against injury the result of accident, that is: trauma from an *unexpected* or *unforeseen* event in the usual course of occupation. § 287.020.2. That enactment simply does not contemplate that the deliberate collision between human bodies constitutes an accident or that injury in the usual course of such an occupation is caused by an unexpected event.

■ The claimant Palmer attempts another point: that a stipulation concluded between the Kansas City Football Club and another football claimant determines the issue of compensability. The year earlier, Gambrell—a member of the Kansas City Chiefs—was injured during play against the Los Angeles Rams. He brought a claim for workers compensation. On hearing, the issue joined was whether by the terms of the

---

7. "The Commission finds that in this particular instance the claimant's injury was caused by his unusual and abnormal position due to being thrown off balance, rather than the result of the actual play or assignment he was attempting to complete."

8. Administrative Law Judge Kaut concluded:

"The testimony indicated being hurt was part and parcel of the game of football."
That finding of fact, employed to deny the claim, was tantamount to a determination of law that an injury in the course of a professional football encounter is not a result of accident and so is outside the intendment of the compensation law. We agree with that insight.

employment contract the employer and insurer were entitled to credit under § 287.-160.3 for money paid to the employee as wages after his injury.[9]  The employee and employer stipulated compensability, thus the question of accident was not confronted.  The claimant Palmer comments petulantly that to allow the employer to "pick and choose its defenses" from claim to claim is "unconscionable," but offers no rationale, legal argument or authority that gives the stipulation the conclusive collateral effect the claimant suggests.  Nor does the claimant show how a question of law—whether an injury to a professional football player in the normal course of that activity results from accident—stipulated to erroneous effect can irrevocably bind the Industrial Commission or a court on review.  *Ikerman v. Koch*, 580 S.W.2d 273, 278[1, 2] (Mo. banc 1979).

The judgment of the circuit court is reversed with directions to remand the claim to the Industrial Commission for entry of denial of compensation.

All concur.

**9.**  That precise issue was also before the Industrial Commission, and a point made but not reached on this appeal.