DAVID H. ROWE *v.* BALTIMORE COLTS ET AL.

[No. 611, September Term, 1982.]

*Decided January 11, 1983.*

The cause was argued before GILBERT, C. J., and LISS and BISHOP, JJ.

*Jeffrey W. Ochsman,* with whom were *Gerald Herz* and *Friedlander, Misler, Friedlander, Sloan & Herz* on the brief, for appellant.

*Richard Teitel, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Charles R. Goldsborough, Jr., Assistant Attorney General,* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

This is the case of the tackled tackle. It involves David Rowe, a defensive tackle for Baltimore Football, Inc., trading as the Baltimore Colts (Colts) who filed a claim with the Workmen's Compensation Commission. Rowe asserted that he sustained a loss of the use of his right arm as a result of an accidental injury during a scrimmage [1] two days after an exhibition game with the Philadelphia Eagles. The Commission found that Rowe had, indeed, suffered a compensable injury resulting in 40% loss of the use of his right arm with 30% being attributable to the injury incurred in the scrimmage.

The Colts attempted to block Rowe's recovery by appealing to the Circuit Court for Baltimore County.[2] Prior to trial, Rowe and the Colts each filed a motion for summary

---

1. "Scrimmage" as used herein means a full speed body contact simulation of game conditions.

2. We say "attempted" because Md. Ann. Code art. 101, § 56 (a) provides in part that "[a]n appeal shall not be a stay of any order directing payment of compensation. . . ." Moreover, payment made cannot be recovered even if the award is reversed. St. Paul Fire & Marine Ins. Co. v. Treadwell, 263 Md. 430, 283 A.2d 601 (1971).

judgment. The motions were denied by Judge Cullen H. Hormes.

The case was tried by a jury, presided over by Judge Walter Haile. The jury decided that Rowe did not incur an accidental injury within the meaning of the Workmen's Compensation Act. Md. Ann. Code art. 101.

Apparently believing he is the victim of an erroneous jury instruction, Rowe has appealed to this Court. He asks that we reverse the judgment of the circuit court that was entered on the jury's verdict.

## —THE FACTS—

The Colts played an exhibition game against the Philadelphia Eagles on Friday, August 17, 1979. In the course of that game, Rowe "either tripped [or slipped] on the turf and came down on . . . [his] elbow. And . . . [he] sustained an injury to . . . [his] elbow." He was treated by the team trainer. Because the Colts had the next day off from practice, Rowe flew home. When he returned on the morning of the 19th [3] his elbow was swollen. Rowe was sent to the team's physician, where the elbow was aspirated. Rowe then returned to the practice field and joined the scrimmage. During that scrimmage, Rowe says he received the injury that led to this litigation.

Rowe described the event in these words:

"Well, in this practice, I was playing left defensive tackle that I had played for the whole time I was with the Colts, and also with the other pro teams. And I took a play straight on, front. And whenever, as a football player, you're told to take everything up in front of you, you accept blocks from the offense. You react to the blocks in front of you, and you move to where the ball is. And in this

---

**3.** It is not clear from the record whether the Colts returned to the practice field on Sunday, the 19th, or Monday, the 20th. We are informed that NFL teams do not ordinarily practice on Sunday. In any event, in this case it is the occurrence that is important, not the date.

play, I hit up into the guard, and the play was coming real — well, coming very close to me. Ed Simonini who is our middle linebacker who's a very tenacious person, and, well, we call him a big hitter. He came running forward. And in the process of trying to hit the ball player, he drove into the back of my arm. And I'll be honest with you, I never experienced any pain like that in my life. I played 20 years of football, and that was the most excruciating pain I ever had.

And I immediately walked on over, and I told the trainer. And I've always prided myself on being a very physical person. I'm six eight, 280 pounds, and I never even — I rarely missed practice. And it really, it really was quite an injury.

. . . .

... Very rarely does a defensive lineman, contrary to what was said earlier, *very rarely does a defensive lineman get hit in the back because the reaction time for the secondary linebacker is such that if the ball carrier — the ball carrier is already into the defensive line before the linebackers or the secondary can get to them.* So very — I would say I wouldn't think one out of a million hits would you take in the back. In fact, in twenty years of football, that's the only time I can think back where I got speared from the back side.

I can't think of another incident. That was what was so different about it, such a unique thing. It was just different." (Emphasis supplied.)

Rowe claims that the injury terminated his career as a professional football player.

The Colts' position was and is that the injury happened in the game with the Eagles and not during the practice. The then Colt "Strength Coach," Joseph Vitt, testified that there was no record of any injury to Rowe in the course of the practice on August 19, or 20, 1979.

## The Issues

In this Court, Rowe raises a number of contentions wherein he perceives that reversible error has been committed by either a hearing court or the trial court. Our review of the Rowe brief discloses five areas [4] he asks us to examine, namely:

I. The hearing court erred in failing to grant Rowe's summary judgment motion and, thereby, affirm the Workmen's Compensation Commission.

II. The trial court erred in not directing a verdict in favor of Rowe.

III. Rowe was entitled to a judgment N.O.V. or a new trial.

IV. The trial judge erred in refusing to instruct the jury "that accidental injury includes an unusual event or occurrence."

V. Professional football players are entitled to full coverage under the Workmen's Compensation Law.

We shall answer each issue in the same order as Rowe has raised them, adding such additional facts as may be necessary for clarification.

## I.

### The Motion for Summary Judgment

The Court of Appeals said in *Metropolitan Mortgage Fund, Inc. v. Basiliko*, 288 Md. 25, 29, 415 A.2d 582 (1980), *aff'g* 44 Md. App. 158, 407 A.2d 773 (1979) that:

"[A]n appellate court should be loath indeed to overturn, ... [because perhaps the hearing court should have granted a summary judgment] a final

---

4. Rowe's brief contains four (4) numbered issues. We think, however, that there are five issues raised by the brief.

judgment on the merits entered in favor of the party resisting the summary judgment motion. This is aptly demonstrated by the present case where, after a full evidentiary hearing, the court determined that respondents' signatures to the guarantee agreements were not genuine. To turn the tables in this manner would be nothing short of substituting a known unjust result for a known just one. . . .

. . . [W]e now hold that a denial (as distinguished from a grant) of a summary judgment motion, as well as foregoing the ruling on such a motion either temporarily until later in the proceedings or for resolution by trial of the general issue, involves not only pure legal questions but also an exercise of discretion as to whether the decision should be postponed until it can be supported by a complete factual record; and we further hold that on appeal, absent clear abuse . . . the manner in which the discretion is exercised will not be disturbed."

As we see it, Rowe's complaint about Judge Hormes' failure to grant a summary judgment in Rowe's favor has been answered by the clear holding of *Metropolitan.* Here, as there, "[to] turn the tables in this manner would be nothing short of substituting" a known just result for an unknown one.

Judge Hormes expressly rejected Rowe's motion because he was not convinced that the Commission correctly applied the law to the facts. We think that the judge did not abuse his discretion in deciding that the ultimate decision of for whom judgment was to be entered should await a complete factual presentation under proper jury instructions.

## II.

### *The Motions for Directed Verdicts*

Rowe asserts that the trial judge erred in refusing to grant a motion for a directed verdict made at the close of the Colts' case and later upon the close of all the evidence.

A directed verdict is never appropriate when there is any legally sufficient and relevant evidence, however slight, from which a rational mind can infer a fact, which if found to exist would preclude entry of judgment for the movant. *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 328-29, 389 A.2d 887 (1978); *Fowler v. Smith,* 240 Md. 240, 246, 213 A.2d 549 (1965); *Brock v. Sorrell,* 15 Md. App. 1, 6-7, 288 A.2d 640 (1972). In considering whether to grant a directed verdict, the trial judge is required to view all admitted evidence and inferences rationally deducible therefrom in the light most favorable to the party against whom the motion is made. *United Bank & Trust Co. of Maryland v. Schaeffer,* 280 Md. 10, 12, 370 A.2d 1138 (1977); *Fowler v. Smith,* 240 Md. at 247; *City of Salisbury v. McCoy,* 47 Md. App. 488, 491-92, 424 A.2d 164 (1981); *Beckner v. Chalkley,* 19 Md. App. 239, 249, 310 A.2d 569 (1973); *Miller v. Michalek,* 13 Md. App. 16, 17, 281 A.2d 117, 118 (1971). "Maryland," as the Court of Appeals has had the opportunity to observe in *Fowler v. Smith,* 240 Md. at 246, "has gone almost as far as any [other] jurisdiction that we know of in holding that meager evidence is sufficient to carry the case to the jury." *See also Brock v. Sorrell,* 15 Md. App. at 6. Unless the facts and circumstances permit the drawing of but one inference in regard to the issues, a directed verdict should not be granted. *Snoots v. Demorest,* 254 Md. 572, 255 A.2d 12 (1969); *Beckner v. Chalkley,* 19 Md. App. at 249.

There was evidence in the instant case that a defensive lineman must "play [the game] with reckless abandon;" that "if you're playing the game right you play with pain;" "you can expect impact injuries in football;" it is not a phenomenon for a defensive lineman to be struck from behind by the defensive linebacker and by the safety, who "are coming up from behind to make a tackle."

Such evidence generated a jury issue in the light of Rowe's testimony that "very rarely does a defensive lineman get hit in the back."

We conclude that Judge Haile did not err in denying Rowe's motions for a directed verdict.

### III.

### *Judgment N.O.V. or a New Trial*

Rowe's assertion that the trial judge erred in refusing to enter a judgment *non obstante veredicto* or alternatively a new trial is devoid of merit. The reason it lacks merit is that the same factors that entered into the trial judge's decision as to whether to grant a directed verdict were considered on a motion for judgment N.O.V. or a new trial. *Ramsey v. Physician's Memorial Hospital,* 36 Md. App. 42, 373 A.2d 26 (1977); *Miller v. Michalek, supra. See also Merritt v. Darden,* 227 Md. 589, 176 A.2d 205 (1962). Hence, when a motion for a directed verdict is properly denied, as here, it normally follows that a motion for a judgment N.O.V. or a new trial should also be denied.

### IV.

### *The Accidental Injury*

At the conclusion of the evidence, Judge Haile instructed the jury:

> "[T]he Workmen's Compensation Act of Maryland . . . provides that every employer subject to the provisions of . . . [the Act] shall pay or provide as required [t]herein compensation for, according to the schedules of . . . [the] Article, for disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury with certain exceptions which are not relevant in this case. . . . In determining personal injury and accidental injury, accidental personal injury, . . . the Legislature . . . says . . . personal injury, accidental injury and accidental personal injury as used in the Act means only accidental injury arising out of and in the course of employment. And includes disease or infection as may naturally result therefrom.

Includes frostbite, sun stroke, resulting from weather conditions, includes occupational disease, and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment. And *[accidental injury] includes also some unusual strain or exertion of the employee, or some unusual condition of the employment.*

... [T]he parties do not ... raise any dispute in this case concerning the question of whether this injury occurred during a professional ... [football] game or practice for a game which is [in] the course of the employment. ... So that the sole question for you to decide is whether the injury was accidental. ...

There is some evidence which, if believed by you, tends to prove that during the practice, a negligent act of a third person, namely, one of the other players in the squad directed against the claimant ... [Rowe] who was an employee, in the course of his employment caused the injury. And if you believe that, it would come within the statutory definition of accidental injury. If you do not believe it, then the question for you to decide is whether the injury resulted from some unusual condition of the employment, or some unusual strain or exertion of the employee." (Emphasis added.)

Rowe excepted to that charge because he wanted the judge to tell the jury that an accidental injury included "unusual events or occurrences."

We think that Judge Haile's instruction adequately set forth the applicable law, as well as the alternative findings the jury could make.

Our research fails to disclose any Maryland case that defines "accidental injury" to include "unusual events or occurrences." *Fisher Body Division, General Motors Corp. v. Alston,* 252 Md. 51, 249 A.2d 130 (1969).

The Court said, in *Schemmel v. T.B. Gatch & Sons*

*Contracting and Building Co.,* 164 Md. 671, 680, 166 A. 39 (1933), that:

"The word 'accident' in its ordinary and usual implications is associated with ideas of trauma, and involves to a degree at least elements of force, violence and surprise. But in Workmen's Compensation Law its meaning has been expanded to include any mischance resulting in physical injury to the bodily tissues produced by some *unusual and extraordinary condition or happening in the employment.* It has therefore been interpreted to include such untoward occurrences as the rupture of an aneurism, pulmonary and cerebral hermorrhages, hernia, infection, and heart dilation, arising out of some unusual or extraordinary condition in the employment, even where the injury was due in part to pre-existing disease or physical abnormality in the claimant." (Emphasis added.)

The *Schemmel* language is similar to that employed by the trial judge in his jury instruction.

As *Schemmel* and its siblings [5] suggest, the adjectival phrase "accidental injury" may include force, trauma, violence, surprise, and mischance resulting from unusual and extraordinary conditions or happenings of employment.

The key to the application of the term "accidental injury," is whether the occurrence was an unusual or unexpected happening in the course of employment. Thus, if a stenographer was suddenly subjected to another employee's striking him or her in the elbow with great force, the resulting injury would at a minimum be unusual, unexpected, and surprising. It would, in any event, not be a commonplace happening. Consequently, the stenographer would properly be said to have incurred an accidental injury within the meaning of the Workmen's Compensation Law.

---

5. Mize v. Beauchamp Associates, Inc., 245 Md. 583, 586, 227 A.2d 5 (1967); B & O. R.R. v. Zapf, 192 Md. 403, 410, 64 A.2d 139 (1949); Yellow Cab v. Bisasky, 11 Md. App. 491, 507, 275 A.2d 193 (1971); Whiting-Turner Contracting Co. v. McLaughlin, 11 Md. App. 360, 363, 274 A.2d 390 (1971).

On the other hand, a professional football player is engaged in an occupation in which physical contact with others is not only expected, commonplace, and usual, but is a requirement. Injury to the player is a frequent event. Indeed, risk of injury is an integral part of the game and possibly accounts for the reason players receive the salaries they are paid.

We infer that one of the tasks of a defensive tackle is to prevent, or at least impede, the forward progress of the offensive team. To accomplish that mission, the defensive tackle of necessity is subject to physical contact from: the offensive linemen, offensive backs running interference for the ball carrier, the ball carrier, blockers protecting the passer, and his own team members who are, or should be, assisting each other in stopping the offensive team's forward motion.

Whenever a person engages in an occupation requiring violent physical contact with others similarly inclined, he must expect that injury may arise therefrom. The injury is neither unusual nor extraordinary. Therefore, we hold that an injury sustained by a professional football player as the result of legitimate and usual physical contact with other players, whether under actual or simulated game conditions, cannot be said to be an "accidental injury" within the meaning of the Maryland Workmen's Compensation Law.[6] *See Palmer v. Kansas City Chiefs Football Club,* 621 S.W.2d 350 (Mo. App. 1981).

Patently, because the jury, in the matter *sub judice* did not believe Rowe had sustained an accidental injury arising out of and in the course of his employment, it concluded that Rowe's injury was the result of the usual rather than the unusual.

---

**6.** We do not herein decide whether injury caused to the player as the direct result of extraordinary violence is compensable. That decision must await another day.

## V.

### Professional Football Players and Workmen's Compensation

Lastly, Rowe avers that professional football players are entitled to full coverage under the Workmen's Compensation Law.

Our review of the record discloses that the parties, as well as the Commission and the trial court, seemed to accept the fact that professional football players are within the purview of the Workmen's Compensation Law.[7] Why Rowe suddenly raised the issue in this Court we can not fathom. Since it was not raised in the trial court, it is not properly before us, and we do not decide it. Md. Rule 1085.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

7. During the 1982 Session of the General Assembly, a bill was introduced that would have provided that an accidental injury included *"an injury to a player employee arising out of and in the course of employment with a professional sports team." See* Senate Bill 645.

The bill, now Ch. 801 of the Laws of 1982, effective July 1, 1982, was amended by striking the above italicized clause and inserting in lieu thereof "Compensation may not be denied to an employee because of the degree of risk associated with the employment."