COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Senior Judge Coleman
Argued at Alexandria, Virginia


PRO-FOOTBALL, INC.,
 t/a WASHINGTON REDSKINS AND
 GULF INSURANCE COMPANY

v.   Record No. 0275-01-4

JEFFREY A. UHLENHAKE                          OPINION BY
                                     JUDGE JAMES W. BENTON, JR.
                                          JANUARY 29, 2002
JEFFREY A. UHLENHAKE

v.   Record No. 0326-01-4

PRO-FOOTBALL, INC.,
 t/a WASHINGTON REDSKINS AND
 GULF INSURANCE COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           Benjamin J. Trichilo (Trichilo, Bancroft,
           McGavin, Horvath & Judkins, P.C., on briefs),
           for Pro-Football, Inc., t/a Washington
           Redskins.

           Gerald Herz (Andrew S. Kasmer; Chasen &
           Boscolo, Chartered, on briefs), for
           Jeffrey A. Uhlenhake.


     The Workers' Compensation Commission entered an award of

permanent partial disability benefits in favor of Jeffrey A.

Uhlenhake, a professional football player, for injury to his

left foot and denied him an award of benefits for injury to his

left knee.  Pro-Football, Inc., trading as the Washington

Redskins, contends that injuries to a professional football

player are not covered by the Act and, alternatively, that the evidence does not support the award of benefits for injury to Uhlenhake's left foot. Uhlenhake contends the evidence proved a compensable injury to his left knee. For the reasons that follow, we affirm the commission's award.

I.

Beginning in 1996, Uhlenhake was employed by Pro-Football as an offensive lineman for the Washington Redskins football team. From 1989 to 1996, he had been employed by other professional football teams. During his career, Uhlenhake experienced a number of physical injuries in training, practices, and games. In 1993, he had anterior cruciate ligament (ACL) reconstruction surgery on his left knee. He testified that prior to his employment with Pro-Football he "had some [left] knee clicking, but . . . didn't have any pain or discomfort."

Uhlenhake testified that he sustained an injury on September 28, 1997, during a regularly scheduled game when another player fell on his left ankle and foot. Uhlenhake reported the injury to the team's trainer and continued in the game. The team's physician, Dr. Gordon Lee Avery, an orthopaedic surgeon, examined Uhlenhake and noted a left ankle sprain with swelling, bruising, and pain but no instability. Uhlenhake applied ice to the injury and did not return to Dr. Avery for further treatment for the sprain.

-

Uhlenhake testified that during a regularly scheduled game on November 9, 1997, he felt a "pop and pain" in his left knee when he "twisted or hyper-extended or did something" while blocking an opposing player.  He testified that he continued in the game and reported the incident to the training staff the following day.  Uhlenhake saw Dr. Avery a few days later because of an extreme amount of swelling.  He testified that Dr. Avery gave him a brace and treatments of icing and electrical stimulation.  Although Uhlenhake testified that he had no popping or pain in his knee before this incident, he recalled having some bursa sac problems two weeks prior to the November 9 incident.

The assistant trainer's report indicates that Uhlenhake had "moderate effusion of his left knee" and "did not remember when he injured the knee."  Dr. Avery examined Uhlenhake on November 12 and reported the following:

> [Uhlenhake] has been having some vague
> discomfort about the left knee for the past
> two weeks with some associated swelling.  He
> does not recall a particular injury,
> however.  On careful questioning he has had
> the feeling that the knee is not stable.

> [Uhlenhake] gives a past history of an ACL
> reconstruction back in 1992, and states that
> he had his knee arthroscoped at least three
> times, but he is not certain how much
> chondral damage or meniscal damage had
> occurred.

-

Dr. Avery "suggested that [Uhlenhake] try again wearing his ACL brace to . . . stabilize the knee" and warned that if "the knee is subluxing . . . he needs to stop playing."

Uhlenhake testified that he wore his brace in a regularly scheduled game on November 23. During the game, he "had a pop and some pain." Dr. Avery examined him three days later and noted Uhlenhake had pain "in the posterolateral corner" and renewed "ACL deficiency." He "explained to [Uhlenhake] that if he continues to sublux he is damaging the knee and should stop playing." Uhlenhake participated in two more games that season. Dr. Avery reported "an episode of subluxation of the left knee" on December 3. At the end of the 1997 football season, Uhlenhake had surgery to repair the ACL on his left knee. Dr. Joseph D. Linehan, an orthopaedic surgeon, examined Uhlenhake in 1999 and opined that he had a permanent impairment of his left ankle due to arthritis and of his left knee due to the ACL injury.

Uhlenhake filed a claim for permanent partial disability benefits based upon injuries to his left ankle and foot and to his left knee. Following an evidentiary hearing, the deputy commissioner ruled that injuries sustained in employment by professional athletes are covered by the Workers' Compensation Act and that Uhlenhake was entitled to awards for permanent partial disability benefits for five percent loss of use of his left foot and fourteen percent loss of use of his left leg and

-

for medical benefits.  Pro-Football filed for review by the commission.

Upon its review, the commission rejected Pro-Football's "argument that none of the alleged injuries are compensable because they were not 'accidental' within the meaning of the . . . Act."  In pertinent part, the commission ruled as follows:

> An injury sustained while playing football may be a frequent occurrence, but we disagree that it is a probable, intended, and designed consequence of the employment . . . .  The nature of the employment and the foreseeability of a potential injury does not determine whether an injury sustained in the ordinary course of an employee's duties is an accident.

As to Uhlenhake's foot and ankle injury, the commission made the following ruling:

> [Uhlenhake] credibly testified to an event on September 28, 1997, that caused injury. Dr. Avery examined him on September 28, 1997, because he had inverted his left foot during the game.  [Uhlenhake] was diagnosed with a sprain.  On September 29, 1997, [the assistant trainer] noted an injury to the left foot and ankle area at the previous game.  Dr. Linehan assessed a five percent loss of use to the left lower extremity due to post-traumatic arthritis.  [Pro-Football] presented no testimony or other medical evidence to the contrary.  Accordingly, [Uhlenhake] is entitled to medical benefits and permanent partial disability benefits.

In addition, the commission denied an award of benefits for Uhlenhake's knee injury.  The commission found that "[a]t most, the evidence established that [Uhlenhake] suffered a gradual stretching injury of the ACL graft which progressively worsened

-

during the season."  The commission made special note of Uhlenhake's extensive history of knee problems, Dr. Avery's testimony that the ACL injury was the result of "multiple episodes of trauma," and Dr. Jackson's testimony that the MRI showed that the ACL was stretched.  Both parties appeal from these rulings.

## II.

Pro-Football contends that "injuries resulting from voluntary participation in activities where injuries are customary, forseeable, and expected are not accidental within the meaning of the Virginia Workers' Compensation Act."  It argues that "[i]n determining whether an injury is accidental, the relevant focus is upon the predictability of the injury based upon the activity performed."

As a guiding principle, the Workers' Compensation Act provides that "'[i]njury' means only injury by accident arising out of and in the course of employment."  Code § 65.2-101.

> The Act does not . . . specifically define the term "injury by accident." Consequently, the phrase has been the subject of judicial interpretation.
>
> * * * * * * *
>
> [T]o establish an "injury by accident," a claimant must prove (1) that the injury appeared suddenly at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden precipitating event, and

-

> (3) that it resulted in an obvious
> mechanical or structural change in the human
> body.

Southern Express v. Green, 257 Va. 181, 187, 509 S.E.2d 836, 838 (1999).

Although the burden is upon the employee "to prove how the injury occurred and that it is compensable," Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 387, 363 S.E.2d 433, 440 (1987), the principle is well established that "[t]o constitute injury by accident it is not necessary that there must be a . . . 'fortuitous circumstance' . . . [or] that there should be an extraordinary occurrence in or about the work engaged in." Derby v. Swift & Co., 188 Va. 336, 344, 49 S.E.2d 417, 421 (1948). Moreover, even if an "injury was not accidental as to cause, [if] it was as to result[, . . .] this is sufficient under the [Act]." Id. at 343, 49 S.E.2d at 421. The Supreme Court reaffirmed these principles in Lilly v. Shenandoah's Pride Dairy, 218 Va. 481, 485, 237 S.E.2d 786, 788 (1977). See also R&R Construction Corp. v. Hill, 25 Va. App. 376, 379, 488 S.E.2d 663, 664 (1997).

Pro-Football initially posits that Uhlenhake seeks to recover for "injuries resulting from voluntary participation in activities." (Emphasis added.) The evidence proved, however, that Uhlenhake was engaged in an activity required by his employment. He was employed by Pro-Football to train, practice, and play in football games, which is the business of

-

Pro-Football.  No evidence proved Uhlenhake undertook a voluntary task when he engaged in the activity, which he alleges caused his injury.  This is not a case of an injury "resulting from an employee's voluntary participation in employer-sponsored off-duty recreational activities which are not part of the employee's duties."  Code § 65.2-101 (specifying an exclusion from injury by accident).  Likewise, this is not a case in which the "injury was the direct result of [an employee] taking a risk of his own choosing, independent of any employment requirements, and one that was not an accepted and normal activity at the place of employment."  Mullins v. Westmoreland Coal Co., 10 Va. App. 304, 308, 391 S.E.2d 609, 611 (1990).  Uhlenhake was at all relevant times engaged in an activity within the scope of his employment contract.

Pro-Football argues that by engaging in conduct which is physically dangerous and which has a high likelihood of injury, Uhlenhake must "automatically" expect to be injured.  In support of its contentions, Pro-Football cites two appellate court decisions in other jurisdictions, Rowe v. Baltimore Colts, 454 A.2d 872 (Md. App. 1983), and Palmer v. Kansas City Chiefs Football Club, 621 S.W.2d 350 (Mo. App. 1981), and argues that a football player's traumatic injury is not an injury by accident as contemplated by the Act.  We decline to so hold.

In Rowe, the court specifically noted "that the parties, as well as the Commission and the trial court, seemed to accept the

-

fact that professional football players are within the purview of [Maryland's] Workmen's Compensation Law."  454 A.2d at 878. Thus, the court held that whether "professional football players are entitled to full coverage under the Workmen's Compensation Law" was not an issue raised by the appeal.  Id. at 878-79. Applying Maryland compensation law, the court "h[e]ld that an injury sustained by a professional football player as the result of legitimate and usual physical contact with other players, whether under actual or simulated game conditions, cannot be said to be an 'accidental injury' within the meaning of the Maryland Workmen's Compensation Law."  Id. at 878. Significantly, the court noted, however, that Maryland law was changed after the filing of the claim to provide that "'[c]ompensation may not be denied to an employee because of the degree of risk associated with the employment.'"  Id. at 878 n.7.  Presumably, the court did not apply the revised statute because it was not in effect at the time of the injury.

In Palmer, the issue posed on appeal was the sufficiency of the evidence to prove a professional football player sustained "an accident within the terms of the [Missouri] compensation law."  621 S.W.2d at 353.  The Missouri statute at issue specifically provided that "[t]he word 'accident' as used in this chapter shall . . . be construed to mean an unexpected or unforseen event happening suddenly and violently, with or without human fault, and producing at the time objective

-

symptoms of an injury." Id. at 353 n.2. The court held that under Missouri's "abnormal strain doctrine the [employee] must show that the usual occupation was done in an unusual manner or that the work was not the usual occupational task -- or that some other unexpected source of strain produced the injury." Id. at 354. Applying its statute, the court held that the "strain [Palmer experienced] was an expected incident of the usual work task done in the usual way," id. at 356, and was not "trauma from an unexpected or unforeseen event in the usual course of occupation." Id.

The Rowe and Palmer decisions are contrary to the decisions in the great majority of jurisdictions. "Injuries in [professional] sports are so routinely treated as compensable in the great majority of jurisdictions that they seldom appear in reported appellate decisions." 2 Arthur Larson, Workers' Compensation Law § 22.04[1][b] (2001). Referencing the Maryland statutory changes, which was cited in Rowe but not in effect when the claim arose, Larson's notes that Palmer "is the only surviving appellate decision denying compensation for injury in a professional team sport." Id.

Moreover, no evidence in this record established that Uhlenhake performed his employment tasks with the intent or design to bring on an injury. See Derby, 188 Va. at 342, 49 S.E.2d at 420 (noting that when the effect of the employee's action "was not intended or designed, the injury resulting was

-

produced by accidental means").  Indeed, the record establishes
that Uhlenhake was performing the tasks he was employed to
perform when he was injured.  Pro-Football offered no proof that
he was doing anything other than his required employment tasks
in the manner required.

Pro-Football nevertheless asserts that "[p]rofessional
football players must accept the risk of injury if they wish to
play the game" and argues that "the commission's broadened
definition will extend compensability to . . . others who
voluntarily participate in employment where injury is either
highly probable or certain."  It has long been understood,
however, that the legislature abolished various common law
doctrines, including assumption of the risk, when it adopted the
Workers' Compensation Act.  Humphrees v. Boxley Bros. Co., 146
Va. 91, 95, 135 S.E. 890, 891 (1926).  See also Whalen v. Dean
Street Co., 229 Va. 164, 170, 327 S.E.2d 107, 106 (1985).  It
has also been long understood that the Act was "a compromise
greatly to the advantage of the employee," Humphrees, 146 Va. at
95, 135 S.E. at 891, and was designed to address injury by
accident resulting from "the hazard or risk to which [the
employee] was exposed . . . in the particular business" of the
employer.  Fauver v. Bell, 192 Va. 518, 521, 65 S.E.2d 575, 577
(1951).  Applying the Virginia Act, the Supreme Court has
consistently held "that 'if . . . injury . . . results from, or
is hastened by, conditions of employment exposing the employee

-

to hazards to a degree beyond that of the public at large, the injury . . . is construed to be accidental within the meaning of the [Act].'" Southern Express, 257 Va. at 188, 509 S.E.2d at 840 (citation omitted). See also Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 28 S.E.2d 725 (1944). In effect, Pro-Football's argument, if accepted, would introduce into the workers' compensation law the concept of assumption of the risk for a hazard that is undisputedly an incident of a worker's occupation.

"To say that football injuries are not accidental because of the probability of injury is, if one looks at it more closely, no more than to say that any activity with a high risk factor should be ruled noncompensable." 2 Larson at § 22.04[1][b]. The commission properly rejected this misguided notion and ruled that "[t]he nature of the employment and the foreseeability of a potential injury does not determine whether an injury sustained in the ordinary course of an employee's duties is an accident." The business of Pro-Football is to engage in the activity of professional football. It employs individuals to constantly perform in a strenuous activity that has risks and hazards. As with coal miners, steel workers, firefighters, and police officers, who are covered by the Act, other classes of employees are regularly exposed to known, actual risks of hazards because "the employment subject[s] the employee to the particular danger." Olsten v. Leftwich, 230 Va.

-

317, 319, 336 S.E.2d 893, 894 (1985).  The commission correctly ruled that professional football players are not exempt from the coverage of the Act when they suffer injuries in the game they are employed to perform.

### III.

Pro-Football does not dispute that Uhlenhake sprained his ankle on September 28, 1997, and reported the injury immediately.  It contends that the injury was minor and that no credible evidence supports the award of permanent partial disability.

In view of Code § 65.2-706, "it is fundamental that a finding of fact made by the commission is conclusive and binding upon this court on review."  Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986).  Furthermore, the rule is well established that "[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission."  Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990).

"In accordance with our well established standard of review, we view the evidence in the light most favorable to [Uhlenhake], who prevailed [on this issue] before the commission."  Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20-21, 520 S.E.2d 839, 841 (1999).  The evidence proved that Dr. Joseph D. Linehan, Jr. examined Uhlenhake's ankle and

-

reviewed the medical reports concerning his September 28, 1997 ankle sprain. Dr. Linehan testified that Uhlenhake had post traumatic arthritic degenerative changes to his left ankle resulting from the strain on September 28, 1997. He opined that Uhlenhake sustained a five percent permanent partial impairment to his left foot as a result of the arthritic changes caused by the sprain. Although Dr. Avery testified that he saw "no reason to ascribe a permanency to [the strain]," he noted, however, that "[a]rthritic issues obviously would be different."

The commission found Dr. Linehan's testimony to be persuasive. The commission also found that the record contained "no testimony or other medical evidence to the contrary." Indeed, Dr. Avery did not opine that Uhlenhake suffered no disability from the arthritic changes caused by the strain. On the record before us, we have no basis to conclude that Dr. Linehan's testimony was not credible. We hold, therefore, that the commission's award for permanent partial disability benefits for loss of use of the left foot is supported by credible evidence.

IV.

Uhlenhake challenges the sufficiency of the evidence to support the commission's finding that his left knee injury resulted from cumulative trauma and, therefore, is not compensable.

-

The employee bears the burden of proving by a preponderance of the evidence that an injury by accident occurred.  A New Leaf, Inc. v. Webb, 257 Va. 190, 195, 511 S.E.2d 102, 104 (1999).  To meet that burden the evidence must prove "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change."  Chesterfield County v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990).  The commission determined that Uhlenhake did not prove by a preponderance of the evidence that his ACL injury occurred from an identifiable event.

Pro-Football's head athletic trainer and its assistant athletic trainer testified that Uhlenhake never reported that his left knee injury occurred from a specific incident.  Both trainers also reviewed video records from the relevant games and found no indication that Uhlenhake experienced a specific trauma in those games.  Pro-Football's records indicate that Uhlenhake reported an injury to his left knee in November 1997, but the records also indicate "he did not remember when he injured the knee."  In addition, Dr. Avery testified that Uhlenhake never described or spoke of a particular event that caused his injury.  Dr. Avery and Dr. Charles Jackson reviewed the November 13 MRI of Uhlenhake's knee, and both doctors concluded that the MRI depicted a stretched rather than torn anterior cruciate

-

ligament. Dr. Avery opined that the knee injury was the cumulative result of playing football over many years.

Uhlenhake argues that the record contains sufficient evidence to establish that he incurred an injury by accident on November 9. He points to the team's records of injury to the knee, the testimony of the trainer and the assistant trainer, and Dr. Linehan's report. The trainers testified, however, that Uhlenhake did not report a specific incident. The team's records support their testimony.

The injury report that Dr. Linehan received from Dr. Avery notes that Uhlenhake did not report a specific injury to his left knee. Although Dr. Linehan reviewed the medical records, he testified that in 1999 Uhlenhake did report to him a specific incident and injury. Dr. Linehan's opinion that the November 9, 1997 incident tore the ACL and necessitated the surgery was based in substantial part upon Uhlenhake's report to him two years after the event.

The issue raised by conflicts in medical opinions is a factual matter to be resolved by the commission. Powell, 2 Va. App. at 714, 347 S.E.2d at 533. "The fact that contrary evidence may be in the record is of no consequence if credible evidence exists in support of the commission's findings." Classic Floors v. Guy, 9 Va. App. 90, 95, 383 S.E.2d 761, 764 (1989). We cannot say the commission erred by not giving Dr. Linehan's opinion on this issue persuasive effect and by

-

accepting the opinion of the other doctors and the other evidence. Credible evidence supports the commission's finding "that the [knee] injury was the result of cumulative events." Under the Act, such an injury is not compensable. The Lane Company, Inc. v. Saunders, 229 Va. 196, 199, 326 S.E.2d 702, 703 (1985). Because credible evidence in the record supports the commission's ruling, we affirm the denial of benefits for the knee injury.

For these reasons, we affirm all aspects of the commission's decision.

Affirmed.

-