51 A.3d 544

PRO–FOOTBALL, INC., t/a The Washington Redskins, et al.,

v.

Thomas J. TUPA, Jr.

No. 29, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 22, 2012.

David O. Godwin, Jr. (Ashlee K. Smith of Godwin, Erlandson, MacLaughlin, Vernon and Daney, LLC, Ellicott City, MD), on brief, for Petitioners.

Benjamin T. Boscolo (Gerald Herz and Kevin H. Stillman, Chasen Boscolo Injury Lawyers, Greenbelt, MD), on brief, for Respondent.

J. Porter Wiseman, Esquire, Washington, DC, Jeffrey L. Kessler, Esquire, Adam J. Kaiser, Esquire, Jeffrey H. Newhouse, New York, New York, Amici Curiae brief of the National Football League Players Association, National Bas-

ketball Players Association, Women's National Basketball Players Association, Major League Baseball Players Association, National Hockey League Players Association, Professional Hockey Players Association, and Major League Soccer Players Union.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

In this case, involving a claim by a former professional football player for benefits under the Maryland Workers' Compensation Act,[1] based upon an injury during pre-game warm-up at the employer's stadium in Prince George's County, Maryland, the employer and its insurer presents two issues. The first is whether the Maryland Workers' Compensation Commission should have exercised jurisdiction over the claim when the employment agreement contained a forum selection clause providing, *inter alia,* that claims for workers' compensation benefits should be governed by Virginia law and that the Virginia Workers' Compensation Commission should have exclusive jurisdiction to resolve such claims. The second issue presented by the employer and insurer is whether injuries occurring while playing and practicing professional football are "accidental injuries" and thus compensable under the Maryland Workers' Compensation Act.

## I.

The facts underlying the two issues raised in the Court are not disputed by the parties. In March 2004, the respondent Thomas Tupa and the petitioner Pro–Football, Inc., trading as (t/a) the "Washington Redskins," entered into a four-year National Football League (NFL) employment contract for Tupa to play football for Pro–Football, Inc. The position

---

1. Maryland Code (1991, 2008 Repl.Vol.), § 9–101 et seq. of the Labor and Employment Article.

played by Mr. Tupa was "punter." Pro–Football, Inc., t/a the Washington Redskins, is incorporated in Maryland and owns its stadium, named "FedEx Field," which is located in Land-over, Prince George's County, Maryland. All of Pro–Football, Inc.'s "home" football games are played at FedEx Field in Maryland, and the players' practice or "warm-up" just before the games also occurs at FedEx Field. Pro–Football, Inc., has its headquarters and practice facility in Virginia, and most practices are at the Virginia facility. Such practices, of course, are for the purpose of getting the players ready to play well at the football games.

The employment contract between Tupa and Pro–Football, Inc., contained, in an addendum, a forum selection clause which stated as follows:

> "*JURISDICTION.* The parties hereto agree that this Play-er Contract shall for all purposes be deemed to have been negotiated and executed in Virginia; that should any dis-pute, claim or cause of action (collectively 'dispute') arise concerning rights or liabilities arising from the relationship between the Player and the Club, the parties hereto agree that the law governing such dispute shall be the law of the Commonwealth of Virginia, and that the exclusive jurisdic-tion for resolving such dispute in the case of Workers' Compensation is the Virginia Workers' Compensation Com-mission, and in the case of Workers' Compensation claims the Virginia Workers' Compensation Act shall govern."

In January 2005, Tupa complained of mild lower back pain, and he was examined by Dr. Thomas Schuler of the Virginia Spine Institute. At the time, Dr. Schuler determined that Tupa suffered from "significant underlying spondylosis and stenosis," a condition which the doctor did not believe would effect Tupa's ability to play during the 2005–2006 football season, particularly because Tupa had successfully completed the 2004–2005 season. The doctor concluded that Tupa "should be able to play one or two more seasons" before the condition greatly impacted him.

On August 19, 2005, at FedEx Field, during his pre-game warm-up for a pre-season game, Tupa landed awkwardly after a punt and felt a sharp pain in his lower back. He described the pain as a "jarring" sensation, sought immediate medical attention, and received medication.

On August 22, two days later, Tupa again visited Dr. Schuler, who noted that Tupa was reporting "95% back pain." An MRI disclosed "significant progression of the disc degeneration ... [t]hat clearly progressed significantly from a year ago with much more collapse." When Tupa saw Dr. Schuler again on August 23, Dr. Schuler concluded that Tupa had significant discogenic pain and could possibly be a good candidate for surgery. The doctor also determined that Tupa was not able to continue playing professional football until he was able to get his condition and the related pain "calmed down." The doctor recommended intradiscal steroid injection "as a last ditch effort to get [Tupa] back to a functional status."

When Tupa next saw the doctor on September 2, 2005, Tupa reported that the pain had not subsided and that he continued to have numbness and tingling sensations in his feet. Dr. Schuler recommended giving Tupa's condition more time to heal naturally before proceeding with an operative solution. Dr. Schuler also noted that "the patient is still disabled from participating in the NFL, and he is still working aggressively in his rehabilitation to get back to a functional pain-free status."

Despite a treatment regime which included medication and physical therapy, Tupa's condition did not improve. In January 2006, during an end of season evaluation, Dr. Schuler noted that Tupa suffered from "a marked disc collapse ... of approximately 90%." Dr. Schuler concluded that Tupa's condition would not improve further without major spinal surgery, and that, even if Tupa did have surgery, it would be unlikely that he would ever be able to play professional football again. After discussing his options, along with the related risks, with Dr. Schuler, Tupa decided to forego surgery. Dr. Schuler noted that Tupa "under[stands] the risks of

surgery versus no surgery, and participation and non-participation in the NFL. [Tupa] agrees . . . he is not a candidate for the NFL at this time."

On May 15, 2006, Tupa filed a claim for benefits because of his back injury with the Virginia Workers' Compensation Commission. He subsequently withdrew this claim, and the Virginia Commission dismissed the matter "without prejudice."

On October 12, 2006, Tupa sought an independent medical evaluation from Dr. Michael Franchetti. Dr. Franchetti concluded that the back injury sustained by Tupa on August 19, 2005, was "within a reasonable degree of medical certainty . . . a career-ending injury for" Tupa. Another doctor, Dr. Charles Jackson, evaluated Tupa on December 11, 2006, and he likewise concluded that Tupa's professional football career would be shortened, but he disagreed with the other doctors' assessment that the back injury was caused by Tupa's professional football activities. Rather, he concluded that the August 19th injury "manifest[ed] an ongoing degenerative spine condition which . . . was aggravated by years of [punting]." He determined that "[t]he kicking incident did not cause or precipitate damage to [or] materially change the degenerative condition which" caused the end of Tupa's career.

At the present time, Tupa has not sought surgical intervention to address his back pain. He no longer plays professional football, but is currently employed in a sedentary position, which he has held since February 2006. Tupa was paid by Pro–Football, Inc., pursuant to his contract, for the remainder of the 2005–2006 season. Although Tupa still suffers from pain and takes medication to address it, he acknowledged in the circuit court trial that he believes that he will eventually need back surgery, although he is delaying the procedure for as long as possible.

Tupa filed a claim for workers' compensation benefits with the Maryland Workers' Compensation Commission on March 30, 2007. The petitioners, Tupa's employer and its insurer, challenged Tupa's claim on the issues of "jurisdiction," wheth-

er the injury was an accidental injury, and whether his disability was casually related to the injury in August 2005. On March 3, 2008, the Maryland Workers' Compensation Commission held a hearing on Tupa's contested claim. The Commission decided, on March 14, 2008, that the Maryland Commission could properly exercise jurisdiction over Tupa's claim, that Tupa had sustained an accidental injury arising "out of and in the course of [his] employment," and that Tupa's disability was causally related to his accidental injury. Tupa was awarded temporary partial disability benefits and the petitioners were ordered to pay the related medical expenses.

Pro–Football, Inc., and its insurer filed an action for judicial review in the Circuit Court for Prince George's County and requested a trial by jury. Although the parties agreed that there were no factual disputes regarding the issue of jurisdiction, a two-day jury trial was held, in which the jury decided that Tupa had sustained an accidental injury in August 2005 and that his disability was causally connected to that accidental injury. The Circuit Court determined, as a matter of law, that the Maryland Workers' Compensation Commission was entitled to exercise jurisdiction over Tupa's workers' compensation claim.

Tupa's employer and its insurer noted an appeal to the Court of Special Appeals, which affirmed in a reported opinion, *Pro–Football v. Tupa*, 197 Md.App. 463, 14 A.3d 678 (2011). The intermediate appellate court agreed with the Commission and Circuit Court that the Commission properly exercised jurisdiction over Tupa's workers' compensation claim, that Tupa was a covered employee, that Tupa incurred an accidental injury in August 2005, and that there was ample evidence to sustain the jury's finding that Tupa's disability was caused by the August 2005 injury.

Tupa's employer and insurer petitioned this Court for a writ of certiorari which was granted. *Pro–Football v. Tupa*, 420 Md. 81, 21 A.3d 1063 (2011). The petitioners raise in this

Court the following two issues (Petitioners' brief in this Court at 2):

## "Questions Presented

"I. Whether Maryland has jurisdiction over the Claimant's workers' compensation claim when the Claimant signed an employment contract agreeing to bring all workers' compensation claims in the Commonwealth of Virginia.

"II. Whether the Claimant sustained an accidental injury arising out of and in the course of his employment on August 19, 2005." [2]

## II.

▮ The petitioners' principal argument is that the Maryland Workers' Compensation Commission had no jurisdiction over Tupa's claim and that the Maryland Workers' Compensation Act had no application to the claim because "the Claimant

---

**2.** As pointed out in the text, the Court of Special Appeals dealt with four issues, namely (1) whether the Maryland Commission should have exercised jurisdiction in light of the forum selection clause in the employment contract, (2) whether Tupa was a "covered employee" under the Maryland statute, (3) whether the injury in August 2005 was an "accidental injury" within the meaning of the Maryland statute, and (4) whether Tupa's disability was caused by the August 2005 injury. The petition for a writ of certiorari raised the first three of these issues but did not include the fourth. In their briefs and oral argument before this Court, however, the employer and insurer raised only two issues, *i.e.*, whether the Maryland Commission should have exercised jurisdiction in light of the forum selection clause and whether Tupa sustained an accidental injury within the meaning of the Maryland Workers' Compensation Act.

The "covered employee" issue was not mentioned in petitioners' opening brief, reply brief, or oral argument. Consequently, the issue is not before us. *See, e.g.*, Maryland Rule 8–504(a)(3); *CWA v. Public Service Commission*, 424 Md. 418, 423 notes 2 and 3, 36 A.3d 449, 451–452 notes 2 and 3 (2012) ("Appellant did not brief this issue, and we do not consider it"); *Chesek v. Jones*, 406 Md. 446, 455–456 n. 7, 959 A.2d 795, 800 n. 7 (2008) ("[W]e will not address question 4 . . . where [the] parties failed to brief the issue and failed to address it at oral argument"); *DiPino v. Davis*, 354 Md. 18, 56, 729 A.2d 354, 374 (1999) ("[I]f a point germane to the appeal is not adequately raised in a party's brief, the court may, and ordinarily should, decline to address it").

was contractually bound to bring his claim for workers' compensation benefits in the Commonwealth of Virginia." (Petitioners' brief at 4). The petitioners rely upon opinions of this Court indicating that " 'forum-selection clauses are presumptively enforceable.' " (*Ibid.*, quoting *Secure Financial v. Popular Leasing*, 391 Md. 274, 282, 892 A.2d 571, 576 (2006)).

None of this Court's opinions relied upon by the petitioners, however, involved a workers' compensation claim. More specifically, none of these opinions involved a statute which voided a provision in an employment contract waiving the rights of a covered employee under the Maryland Workers' Compensation Act.

The Maryland Workers' Compensation Act, in § 9–104(a) of the Labor and Employment Article of the Code, provides as follows:

"§ 9–104. **Agreements.**

(a) *Exemption from duty; waiver of right.*—(1) Except as otherwise provided in this title, a covered employee or an employer of a covered employee may not by agreement, rule or regulation:

(i) exempt the covered employee or the employer from a duty of the covered employee or the employer under this title; or

(ii) waive a right of the covered employee or the employer under this title.

(2) An agreement, rule, or regulation that violates paragraph (1) of this subsection is void to the extent of the violation."

Thus, an agreement exempting "the employer from a duty of the ... employer under the" Act is "void." (§ 9–104(a)(i)). Furthermore, an agreement waiving "a right of the covered employee ... under the" Act is void (§ 9–104(a)(ii)). Although § 9–104 contains a few special provisions, such as for railroad employees, none of them are applicable to the present case.

■ Section 9–104(a), in plain, unambiguous language, precludes an agreement which exempts an employer from the duty of paying workers' compensation benefits which are otherwise due under the *Maryland* statute. The section also precludes an agreement which waives the right of an employee to receive workers' compensation benefits which are otherwise due under the *Maryland* statute. A holding that forum selection clauses constitute an exception to § 9–104 would contravene basic principles concerning the interpretation of statutes. The petitioners would have us construe § 9–104 as if there was in the statute an exception for forum selection clauses. This we cannot do. As stated in numerous cases, a " 'plainly worded statute must be construed without forced or subtle interpretations designed to . . . limit the scope of its operation.' " *Harris v. Board of Education*, 375 Md. 21, 31, 825 A.2d 365, 371 (2003), quoting *Caffrey v. Dept. of Liquor Control for Montgomery County*, 370 Md. 272, 292, 805 A.2d 268, 279 (2002). Inserting into § 9–104 an exception for forum selection clauses " 'would be to re-draft the statute under the guise of construction,' " *Montrose Christian School v. Walsh*, 363 Md. 565, 595, 770 A.2d 111, 128–129 (2001), quoting *Davis v. State*, 294 Md. 370, 378, 451 A.2d 107, 111 (1982).

Moreover, the applicable authorities support our conclusion that the forum selection clause in the employment contract was ineffective to divest the Maryland Workers' Compensation Commission of the ability to exercise jurisdiction. In *Kacur v. Employers Mut. Cas. Co.*, 253 Md. 500, 509, 254 A.2d 156, 161 (1969), this Court held that a forum selection clause in the employment contract was ineffective in a workers' compensation case, and the Court quoted with approval Professor Larson as follows (3 Larson, *Workmen's Compensation Law*, § 87.71 at 395 (1968 Supp.)):

" 'Express agreement between employer and employee that the statute of a named state shall apply is ineffective either to enlarge the applicability of that state's statute or to diminish the applicability of the statutes of other states. Whatever the rule may be as to questions involving commercial paper, interest, usury and the like, the rule in

workmen's compensation is dictated by the overriding consideration that compensation is not a private matter to be arranged between two parties; the public has a profound interest in the matter which cannot be altered by any individual agreements. This is most obvious when such an agreement purports to destroy jurisdiction where it otherwise exists; practically every statute has emphatic prohibitions against cutting down rights or benefits by contract. The only exception occurs under several statutes which explicitly permit the parties to agree that the local statute shall not apply to out-of-state injuries.' "

In *McElroy v. Pohopek*, 375 Md. 574, 578 n. 2, 594–595, 826 A.2d 474, 476 n. 2, 486 (2003), this Court held that Maryland Workers' Compensation law applied to an employee's claim despite a forum selection clause in the employment contract stating that the employee's workers' compensation claims "shall be exclusively governed by the [workers'] compensation laws of the State of Alabama." *See also Alaska Packers Assn. v. Comm'n*, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935) (The employment contact, entered in California for work in Alaska, provided that Alaska Workers' Compensation law should apply, but the Supreme Court of California, upholding an award of benefits under California workers' compensation law, held that the forum selection clause was invalid. The Supreme Court of the Untied States affirmed, holding that the application of California workers' compensation law violated neither the Full Faith and Credit Clause nor the Due Process Clause of the Fourteenth Amendment).

As pointed out by the Court of Special Appeals in the present case, numerous cases in other states have also refused to give effect to forum selection clauses in workers' compensation cases. *See Pro–Football v. Tupa, supra*, 197 Md.App. at 477, 14 A.3d at 686, collecting some of the cases; *Swenson v. Nickaboine*, 793 N.W.2d 738, 743 (Minn.2011); *Gotkin v. Weinberg*, 2 N.J. 305, 308, 66 A.2d 438, 439 (1949); *McIlvaine Trucking, Inc. v. Workers' Compensation Appeal Board*, 570 Pa. 662, 673, 810 A.2d 1280, 1286 (2002); *Jenkins v. Sal Chem. Co.*, 167 W.Va. 616, 280 S.E.2d 243 (1981).

### III.

■ The petitioners' second argument is that Tupa's injury was not an "accidental personal injury" within the meaning of the Maryland Workers' Compensation Act, § 9–101(b)(1) of the Labor and Employment Article.[3] Petitioners' rely upon *Rowe v. Baltimore Colts,* 53 Md.App. 526, 454 A.2d 872 (1983).

In *Rowe,* a professional football player was injured while practicing in a "scrimmage," and sought workers' compensation benefits. The Court of Special Appeals held in *Rowe* that the player had not suffered an "accidental injury" within the meaning of the definition presently codified as § 9–101(b)(1). The *Rowe* opinion, 53 Md.App. at 535, 454 A.2d at 877, stated that "accidental injury" within the meaning of the Workers' Compensation Act included injury "produced by some unusual and extraordinary condition or happening in the employment." The opinion continued (53 Md.App. at 535–536, 454 A.2d at 878, emphasis added):

"The key to the application of the term 'accidental injury,' is whether the occurrence was an *unusual or unexpected* happening in the course of employment. Thus, if a stenographer was suddenly subjected to another employee's striking him or her in the elbow with great force, the resulting injury would at a minimum be *unusual, unexpected,* and surprising. It would, in any event, not be a commonplace happening. Consequently, the stenographer would properly

---

**3.** Section 9–101(b) provides as follows:

"(b) *Accidental personal injury.*—'Accidental personal injury' means:

(1) an accidental injury that arises out of and in the course of employment;

(2) an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of employment of the covered employee; or

(3) a disease or infection that naturally results from an accidental injury that arises out of an in the course of the employment, including:

(i) an occupational disease; and

(ii) frostbite or sunstroke caused by a weather condition."

be said to have incurred an accidental injury within the meaning of the Workmen's Compensation Law.

"On the other hand, a professional football player is engaged in an occupation in which physical contact with others is not only expected, commonplace, and *usual*, but is a requirement."

The Court of Special Appeals in the present case held that *Rowe* was contrary to current statutory and case law, and specifically that it was inconsistent with this Court's opinion in *Harris v. Board of Education, supra*, 375 Md. 21, 825 A.2d 365. The Court of Special Appeals overruled *Rowe*, and we fully agree with that Court's action.

This Court in *Harris v. Board of Education* explicitly rejected the principle used in *Rowe* that an "accidental injury" must arise from an unusual or unexpected occurrence. Prior to *Harris*, several appellate opinions had held that, in order for an injury occurring during employment to be "accidental," the injury must result from some "unusual strain, exertion or condition in employment." *Sargent v. Board of Education, Baltimore County*, 49 Md.App. 577, 580–581, 433 A.2d 1209, 1211 (1981). *See, e.g., Stancliff v. H. B. Davis Co.*, 208 Md. 191, 198, 117 A.2d 577, 581 (1955); *Geipe, Inc. v. Collett*, 172 Md. 165, 190 A. 836 (1937); *Schemmel v. Gatch & Sons*, 164 Md. 671, 166 A. 39 (1933); *State Roads Commission v. Reynolds*, 164 Md. 539, 165 A. 475 (1933).

In *Harris*, a cafeteria worker was engaged in her usual work day activity of laundering the linens at the end of the day. She dragged a forty-five pound box of laundry soap outside, and when she subsequently bent down, her back "cracked." She was in excruciating pain, and she immediately sought medical attention. During judicial review of the Workers' Compensation Commission's order granting Harris compensation, the case went to the jury, which determined that the Harris's injury was not "accidental" because it did not result from an unusual work activity.

This Court in *Harris* reviewed previous cases requiring that an accidental personal injury arise out of "unusual activity" in

order to qualify for workers' compensation and determined that

> "[t]he line of cases in this Court requiring that an accidental personal injury arise out of 'unusual activity' for there to be coverage obviously adds a requirement not contained in the statutory language." 375 Md. at 30, 825 A.2d at 371.

Reviewing the statutory language and earlier Maryland Workers' Compensation cases, including *Victory Sparkler Co. v. Francks*, 147 Md. 368, 128 A. 635 (1925), this Court held that "what must be unexpected, unintended, or unusual is the resulting injury and *not* the activity out of which the injury arises." *Harris*, 375 Md. at 36, 825 A.2d at 374. The *Harris* Court explained (375 Md. at 33, 825 A.2d at 372):

> " 'The statutory definition of injury, which was made compensable without reference to neglect of employer or fault of worker, except when the injury was self-inflicted or the sole result of the intoxication of the employee, and the abolition of the fellow-servant rule, of defenses of contributory negligence and assumption of risk, and the substitution of a regulated and certain compensation for damages, contribute convincingly to the conclusion that the legislative intent was to include within the act not only the newly created class of compensable injuries, but also *every injury which could be suffered by any worker in the course and arising out of the employment, for which there was then a subsisting right of action....* With this conception of the purpose and effect of the act, the Legislature was consistent in making the prescribed liability of the employer and remedy of the employee exclusive *with respect to all injuries sustained in the hazardous employment,*' " quoting *Victory Sparkler*, 147 Md. at 376–377, 128 A. at 637–638.

In 2 *Larson's Workers' Compensation* § 22.04 (2007), the treatise refers to the "conspicuously wrong" idea that football injuries should not be considered accidental because "football is a dangerous sport fraught with expectation of injury." Larson points out that, in "almost all states in which the

National Football League operates," injuries occurring during practice or the game are "routinely treated as compensable." He comments that denying workers' compensation benefits to professional football players effectively denies a class of covered employees compensation for doing precisely the job they were hired to do. Larson also draws attention to the inherent contradictions in this approach, stating:

> "And why is doing the job itself not covered? Because everyone knows it is fraught with danger. As well, then, tell the coal miner—whose occupation is far more dangerous—that he or she is covered, so long as the miner does not go down into the mine. . . . The books are full of cases in which compensation is denied a covered worker because he or she was *not* doing the job at the time. But never before because he or she *was* doing the job. . . . To say that football injuries are not accidental because of the probability of injury is, if one looks more closely, no more than to say that any activity with a high risk factor should be ruled noncompensable."

Larson criticizes "the kind of loose thinking" that characterizes professional sports injuries as not accidental (*ibid.*):

> "As a little reflection will show, this is tantamount to saying that the player in effect intended to get himself injured. This is, of course, preposterous. True, some of these sports are rough. But everything about them is elaborately designed to prevent actual disabling physical injury. All the forbidden practices—clipping, piling-on, face-masking, spearing, unnecessary roughness, and a host of others—are precisely intended to do everything possible to forestall injury. . . . It is, of course, not particularly surprising if, as a result of some such mish-mash of erroneous impressions both about professional sports and about workers' compensation the untrained person-on-the-street (or in the jury) just somehow feels the professional athlete should not get compensation. But it is unworthy of a legally trained mind to substitute this kind of superficial reaction for an accurate analysis that simply accords professional athletes the same

protection under compensation law as is enjoyed by every-one else who works for a living."

 Tupa's injury occurred "out of and in the course of [his] employment." He was warming up for a game when he landed awkwardly and thereafter sought immediate medical treatment. Ample evidence was presented to show that Tupa suffered a compensable accidental injury during the course of his employment.[4]

**RESPONDENT'S MOTION TO STRIKE GRANTED. JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT.**

---

4. In the "Statement of Facts" portion of their opening brief in this Court, the petitioners include the following footnote:

"Petitioners would note that the Claimant's contract is governed by the Collective Bargaining Agreement ('CBA') entered into by the NFL players' union (NFLPA) and the NFL owners (NFLMC).... Accordingly, federal law pre-empts Maryland law with regard to interpretation of the CBA, a player's compliance therewith, and the propriety of Claimant's injury-related claims. *See* the Labor Management Relations Act § 301, codified at 29 U.S.C. § 185. *See also Ali v. Giant Food, LLC*, 595 F.Supp.2d 618 (Md.2009) [ (D.Md.2009) ]."

No arguments based on the collective bargaining agreement between the players and owners, on federal law, on preemption, or on any federal labor statute, were made by the petitioners before the Commission, the Circuit Court, the Court of Special Appeals, or this Court. No such arguments were made in the certiorari petition or the argument portions of petitioners' briefs in this Court.

The respondent has moved to strike from petitioners' brief the above-quoted footnote, and we agree that respondent's motion should be granted. *See* Maryland Rules 8–131(a) and 8–131(b). *See also, e.g., Fisher v. Eastern Correctional*, 425 Md. 699, 714, 43 A.3d 338, 347 (2012); *Robinson v. Baltimore Police Dep't*, 424 Md. 41, 49, 33 A.3d 972, 977 (2011); *McDaniel v. Baranowski*, 419 Md. 560, 567 n. 7, 19 A.3d 927, 931 n. 7 (2011); *John Hopkins Hosp. v. Correia*, 405 Md. 509, 513, 954 A.2d 1073, 1075 (2008); *Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 60–61, 949 A.2d 639, 649 (2008).